<u>United States District Court</u>
<u>District Of Connecticut</u>

FILED

2004 JUL 14  A 11: 52

U.S. DISTRICT COURT
BRIDGE PORT, CONN.

Duane Ziemba
        Plaintiff,

Vs.

John Armstrong, Jack Tokarz,
Peter Matos, Larry Myers,
Thomas Coates, Michael Lajoie,
Christine Whidden, Dennis Oglesby,
Edward Blanchette, Dr. Wright,
and Patty Wollenhaupt,
        Defendants.

Civil Action No.
3:02 cv 2216 (DJS) (TPS)

Jury Trial Demanded

Defendants Sued In
Individual Capacity

July 11, 2004

<u>Second Amended Complaint</u>

<u>Nature Of The Lawsuit</u>

1. This is a lawsuit arising out of the defendants Unconsitutionally denying the plaintiff his right of out-of-cell meaningful exercise and recreation, the defendants intentionally denying the plaintiff Constitutional adequate medical care, excessive use of force, and the defendants infliction of retaliation against the plaintiff.

2. The plaintiff claims abridgement of his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments, and also his First Amendment rights of the United States Constitution.

3. Jurisdiction of this Court is invoked under provisions of § 1331, § 1343 (1) (2)(3)(4) and § 1367 (a) of Title 28 and § 1983, § 1986, § 1988 and § 2201 of Title 42 of the United States Code.

## Parties

4. The plaintiff, Duane Ziemba, was at all times relevant to these claims in this complaint, a resident of the State of Connecticut. At all times relevant to the incidents complained of herein, he was a non-violent offender, incarcerated inmate in the care and custody of the State of Connecticut Department of Correction.

5. Defendant John Armstrong is a cabinet-level State official, responsible to the State' Chief Executive, the Governor of Connecticut.

-2-

He is, and was at all relevant times, the Commissioner of the Connecticut Department of Correction (DOC). As such, defendant Armstrong is and was the administrative head of the Department of Correction (DOC), responsible for administering, coordinating and controlling the operations of the Department and for the overall supervision and direction of all institutions, facilities, and activities of the Department. Defendant Armstrong is and was specifically responsible, either directly or in a supervisory capacity, for: (a) the supervision, training, discipline and control of persons working for the Department; (b) the establishment and enforcement of policies and practices; and (c) the care and custody of the plaintiff.

6. Defendants Jack Tokarz and Peter Matos are, and were at all relevant times, Deputy Commissioners of the Connecticut Department of Correction (DOC). As such, they are and were members of the Department's central office, responsible for administering, coordinating and controlling the operations

of the Department and for overall supervision and direction of the institutions, facilities, and activities of the Department. Defendants Tokarz and Matos are and were specifically responsible, either directly or in a supervisory capacity, for: (a) the supervision, training, discipline and control of persons working for the Department; (b) the establishment and enforcement of policies and practices; and (c) the care and custody of the plaintiff.

7. Defendant Larry Myers is, and was the lead Warden of the Northern Correctional Institution (Northern C.I.). As such, he is and was responsible for administering, coordinating and controlling the operations of Northern C.I. and for overall supervision and direction of the institution, and activities of Northern C.I.. Defendant Myers is and was specifically responsible, either directly or in a supervisory capacity, for: (a) the supervision, training, discipline and control of persons working at Northern C.I.; (b) the establishment and enforcement of policies

- 4 -

and practices ; and (c) the care and custody of the plaintiff.

8. Defendants Thomas Coates, Michael Lajoie, and Christine Whidden are, and were at all relevant times Majors and Acting Wardens of Northern Correctional Institution (Northern C.I.). As such, they are and were responsible for administering, coordinating and controlling the operations of Northern C.I. and for overall supervision and direction of the institution, and activities of Northern C.I.. Defendants Coates, Lajoie and Whidden are and were specifically responsible, either directly or in a supervisory capacity, for: (a) the supervision, training, discipline and control of persons working at Northern C.I. : (b) the establishment and enforcement of policies and practices ; and (c) the care and custody of the plaintiff.

9. Defendant Dennis Oglesby is, and was at all relevant times a lieutenant assigned to Northern Correctional Institution (Northern C.I.). And he was the unit manager — — Supervisory

Official of One west Unit, the Unit which the plaintiff was housed. As Such, he is and was responsible for administering, coordinating and controlling the operation of housing units at Northern C.I. and for the Supervision, activities, classification, cell housing and out-of-cell exercise and recreation in the housing Units. Defendant Oglesby is and was Specifically responsible, either directly or in a Supervisory capacity, for: (a) the Supervision and control of persons working at Northern C.I.; (b) the enforcement of policies and practices; and (C) the care and custody of the plaintiff.

10. Defendants Edward Blanchette and Dr. Wright are, and were at all times relevant Doctors under contract with the Connecticut Department of Correction, or employees thereof. As Such, they were responsible for providing the plaintiff with Constitutionally adequate medical care, and ensuring the provisions of proper medical treatment.

11. Defendant Patty Wollenhaupt is, and was at all relevant times a registered nurse and the medical unit supervisor of Northern Correctional Institution (Northern C.I.). As such, she is and was responsible for the supervision, control and establishment of policies and practices in/of the medical unit. Defendant Wollenhaupt is and was responsible for providing the plaintiff with constitutionally adequate medical care, and ensuring the provisions of proper medical treatment.

12. At all times relevant to this complaint, the defendants, each of them, were acting under color of law, that is, under color of the Constitution, statutes, laws, regulations, custom and usages of the state of Connecticut.

## Facts

13. The plaintiff seeks judgment against defendants Armstrong, Tokarz, Matos, Myers, Coates, Lajoie and Whidden — — declaring that their policy and custom requiring inmates

who are confined at Northern Correctional Institution (Northern C.I.), administrative Segregation, phase one to wear full mechanical restraints while out of their cells at recreation totally denies all opportunity to engage in the right of out-of-cell meaningful exercise, and relevant to the claims herein it has constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

14. Prisoners housed at Northern C.I., in administrative Segregation (A.S.), phase one are entitled to one hour out of cell recreation per-day, five days a week.

15. The inmates are placed in individual exercise yards, often called cages. The exercise cages are open to the sky, but are covered with wire fencing. And in addition the main outside yard is also covered with wire fencing. The door to the cages is made of iron and is locked

during the time an inmate is inside the cage. The exercise cage door(s) contain a small (approximately six inches by ten inch) separately lockable hatch through which an inmate may extend his hands out in order for guards to apply or remove restraints.

16. The exercise cages are approximately ten feet by twenty feet. No exercise equipment is provided in the cages. But the space could permit an inmate to engage in activities such as calisthenics, jogging, walking, or push-ups, etc.

17. Department of Correction Administrative Directive 9.4 Restrictive Status -- States (mandates) that restraints are to be removed when inmates are in a secure individual recreation area.

18. Administrative Directive 9.4 states the following: "Administrative Segregation (Phase One) Restraints required unless in a secure individual recreation area".

- 9 -

19. Defendants Armstrong, Tokarz, Matos, Myers, Coates, Lajoie and Whidden and each of them individually overtly violate Administrative Directive 9.4 -- to maliciously punish administrative Segregation inmates.    Incredibly these defendants created the policy and custom of full mechanical restraints consisting of handcuffs behind the back, with shackles on ankles, with a homemade tether chain attached, that these restraints are not removed from the inmates during recreation (in the exercise cages).

20. Relevant to the time frame described herein -- At Northern C.I., in administrative Segregation, phase one -- during the one hour per day, five days a week, out of cell recreation full mechanical restraints are utilized on the inmates during the entire recreation period. Consisting of handcuffs behind the back, with shackles on ankles, and with a tether chain attached thereto the handcuffs and shackles. That these restraints are not removed from the inmates during the said recreation period.

21. Indeed this policy and custom (knowingly) completely denies inmates the right to engage in out-of-cell exercise, because by not removing the full restraints it prevents any form of meaningful exercise.

22. Additionally this is a serious unconstitutional policy and custom, due to it knowingly creates an excessive risk to the safety and well being of all inmates (human beings). Because the movement in such full restraints is extremely restrictive and if an inmate (the plaintiff) was to lose his balance (alone locked out in the cage handcuffed behind back) — he would fall on his face, smashing face or head, and/or body unable to prevent serious injury.

23. The utter helplessness of all inmates (the plaintiff) in the full restraints, with deliberate indifference, it creates a profound risk to the life, safety and well being of the inmates.

24. Another example of this unconsitutional

policy and custom is the defendants physically force inmates outside in the exercise cages during inclement weather. Subjecting the inmates (in full restraints) to Severe Suffering.

25. There is no form of inside recreation, out-of-cell time at Northern C.I..

26. No adequate clothing is provided or available for inmates during inclement weather. No gloves, no hates, and no adequate footwear is ever provided. Which inflicts severe suffering to the inmates and prevents inmates from even going to the out-of-cell recreation, during inclement weather.

27. The plaintiff cannot engage in any form of meaningful exercise inside his cell due the following reasons:

(a) The cells are too small. Cells contain a cell partner, two beds, toilet, sink, desk, stool and two big lockers;

(b) Ventilation cell vents are permanently blocked up causing very poor ventilation;

(c) All running water in cells have timers, making it impossible to adequately wash up if exercise in small cell was attempted, becoming sweaty;

(d) Due to Connecticut prison overcrowding the A.S., phase one cells have been doubled up. Which are the worst of the worst and most violent inmates within DOC, all agree that penological concerns and Constitutional protections mandate these inmates be single celled. Double celling of these maximum custody inmates is intolerable under any circumstances. If the plaintiff (a non violent offender) was to attempt to engage in exercise inside cell creating body oder in small cell, and steaming up small cell, it would make cell partner hostile (violent cell partner and worst of worst). Thereby placing plaintiff's life, safety and well being at a profound risk of harm.

28. Whether or not plaintiff is able to engage in exercise inside his cell is really not pertinent. Because it's well established that the plaintiff has the Constitutional right to out - of - cell exercise.

29. Except for the one hour, five days a week recreation described, all other out of cell activity is pritty much nonexistent. Plaintiff is locked in his cell 24 hours a day, except for three ten minute showers a week, maybe a legal call once a month and the shower is next to his cell and telephone directly in the unit. And during this above out of cell movement plaintiff is restrained in full restraints.

30. Due to the described restraint policy and custom the defendants have denied the plaintiff all out - of - cell exercise from May 18, 2002 until December 7, 2003 - - 568 days of denial of meaningful exercise.

31. The plaintiff is, in fact, an non - violent offender who has never harmed anyone.

32. There is no form of penological justification justifying the defendants completely denying the plaintiff all out-of-cell exercise for 568 days.

33. Regular exercise is required to maintain reasonable good physical and psychological health.

34. Denial of out-of-cell exercise violates the Eighth Amendment if the extent of the deprivation is substantial.

35. The total denial of exercise is a serious deprivation of basic human needs.

36. It has been and it is clearly establised that inmates have the right to out-of-cell exercise.

37. The described use of the full restraints on the plaintiff was malicious, intentional and unnecessary. And constitutes excessive use of force in violation of the Eighth and Fourteenth Amendments.

38. As a consequence of the actions and failure to act of the defendants herein described, and the omissions of the defendants, the plaintiff has suffered serious physical and mental injuries as follows:

(a)  Subjected his muscles to severe atrophy;

(b)  Subjected his joints to soreness, painfulness, and to become swollen;

(c)  Subjected his joints to become cold and numb;

(d)  Subjected him to suffer an acute ulcer;

(e)  Subjected him to suffer serious stomach cramps and heartburn;

(f)  Subjected him to suffer severe back pain;

(g)  Subjected his hair to fall out;

(h)  Subjected him to severe mental anguish,

misery and stress;

(i) Subjected him to suffer lethargy;

(J) Subjected him to headaches and migraines;

(K) Subjected him to suffer severe depression;

(L) And has subjected him to insomnia.

39. The plaintiff verbally, and through numerous inmate request forms, letters, grievances and appeals -- specifically placed on actual and constructive notice the following defendants of the violations herein: Defendants Armstrong, Tokarz, Matos, Myers, Coates, Lajoie, Whidden and Oglesby. These defendants and each one individually had the responsibility, authority and obligation to remedy the wrong, but they failed and refused to do so.

40. The defendants herein described were also placed on actual and constructive notice

of the aforementioned violations through other litigation, voluminous complaints and grievances and appeals thereof. The defendants had the responsibility, authority and obligation to remedy the wrong, but they failed and refused to do so.

41. On or about March 6, 2003 the defendants changed, in part, their recreation restraint policy and custom. The new policy allows for the removal of the restraints from inmates during recreation.

42. On May 19, 2003 the new recreation restraint policy went into effect as following: "At recreation inmates will recreate in full restraints, handcuffed behind the back, with leg-irons and a tether chain for thirty days. If successful for the first thirty days, these inmates will be classified to recreate in cuffs behind the back for thirty days. Upon completion of another thirty days in that status, these inmates will be classified to recreate without restraints".

- 18 -

43. The defendants new recreation restraint policy allowing the full restraints to be removed at recreation -- it is an admission of guilt of the original policy was Unconstitutional.

44. The defendants new recreation restraint policy which now allows for the restraints to be removed at recreation -- Substantiates the claims set forth in this lawsuit.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

45. The plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 44.

46. On May 18, 2002 the plaintiff was transferred to Northern C.I. and placed into Phase One - Administrative Segregation.

47. In Phase One - Administrative Segregation it is policy that before the inmates are conducted out of their cells, full restraints must be applied.

- 19 -

48. Depending on the reason for the inmate being conducted out of his cell and where he is going, it thereby determines whether the guards will handcuff the said inmate in the front or behind the back.

49. From the day that the plaintiff was transferred to Northern C.I. on May 18, 2002 and forward -- plaintiff verbally, and through numerous inmate requests, letters, grievances and appeals specifically informed defendants Armstrong, Tokarz, Matos, Myers, Coates, Lajoie, Whidden, Oglesby, Blanchette, Dr. Wright and Wollenhaupt -- that due to his back and spinalcolumn is seriously — permanently injured, each and every time that their staff members forcefully handcuff him behind his back it further seriously injures and damages his back (which is several times per day).

50. This excessive and unnecessary use of physical force has subjected the plaintiff to serious injury, and also to the

infliction of severe pain and suffering by inflicting severe — horrible pain to shoot down his legs, down into his arm, and up into his neck.

51. Notwithstanding the profound injury and pain and suffering that was being inflicted to plaintiff by forcefully handcuffing him behind his back, the defendants failed and refused to take action to have the plaintiff handcuffed in the front only.

52. There is no penological justification to forcefully handcuff the plaintiff behind his back (as described herein) injuring him horribly, grotesquely, and most painfully. Because the plaintiff is a non—violent offender who has never hurt anyone.

53. It was subhuman and subanimal to continuously for well over a year forcefully handcuff the plaintiff behind his back, when it knowingly severely injured him, inflicting profound pain and suffering.

54. Each aforementioned defendant acted with deliberate indifference to the plaintiff's serious medical need, by knowingly and intentionally failing and refusing to issue an order for their staff to handcuff plaintiff in the front only.

55. Indeed a bottom bunk order has been repeatedly issued for the plaintiff, directly due to his seriously injured back. Notwithstanding this fact, with deliberate indifference the defendants intentionally failed and refused to order for the plaintiff to not be handcuffed behind his back.

56. The plaintiff was and is handcuffed in the front to go to a legal telephone call, court, a regular telephone call, to see medical staff, a personal visit and a legal visit. Notwithstanding these facts, the aforementioned defendants continued to have the plaintiff forcefully handcuffed behind his back, despite the fact that

-22-

doing so horribly, grotesquely, and most painfully injured the plaintiff.

57. The aforementioned defendants had the responsibility, authority and obligation to issue an order for the plaintiff not to be handcuffed behind his back and in the front only — — to stop the infliction of the serious injury and pain and suffering, but they each intentionally failed and refused to do so. Constituting deliberate indifference to the plaintiff's serious medical need.

58. The aforementioned defendants had the responsibility, authority and obligation to issue an order for the plaintiff not to be handcuffed behind his back, but they each intentionally failed and refused to do so. Constituting excessive use of force.

59. Ultimately the defendants have inflicted unconstitutional retaliation against the plaintiff. Due to plaintiff exercising his Constitutionally protected

First Amendment rights of access to the Court(s) by filing lawsuits against the defendants named herein and their fellow employees. Lawsuits:
Ziemba V. Armstrong, No. 3:98 cv 2344 (JCH)(HBF);
Ziemba V. Milling, No. 3:02 cv 258 (DFM); and
Ziemba V. Butler, No. 3:03 cv 1241 (AWT)(DFM).

60. Specifically the defendants have retaliated against the plaintiff by their being hostile towards him, and intentionally denying him proper medical care for his seriously injured back, by their knowingly and intentionally causing plaintiff profound injury and pain by forcefully having him handcuffed behind his back.

61. Defendant Wollenhaupt has repeatedly told the plaintiff: "that as long as he is suing her or medical he will never receive treatment, and that she has made sure that he is not handcuffed in the front to torture him and teach him not to sue anyone."

- 24 -

62. Defendant Oglesby has repeatedly told the plaintiff : "He does not care how much pain his staff inflicts by handcuffing him in the back, he will fucking learn the hard way not to sue him".

63. Defendant Coates and Lajoie have both told the plaintiff : "If he withdraws his lawsuits they will then have their staff handcuff him in the front only".

64. The forcefully and maliciously handcuffing the plaintiff behind his back, inflicted such excruciating pain — — that from May 18, 2002 until December 7, 2003 it precluded plaintiff from leaving his cell even once to go to out-of-cell recreation. In addition to precluding plaintiff from leaving his cell to take a shower.

65. The aforementioned defendants by failing and refusing to issue an order for the plaintiff to not be handcuffed behind his back and in front only, they thereby prevented the plaintiff from being able

-25-

to leave his cell to go to recreation and get fresh air.

66. Not only have the defendants denied the plaintiff his right to out-of-cell exercise for the 568 days as described, but additionally the defendants have denied the plaintiff his right to out-of-cell time and fresh air for 568 days.

67. The aforementioned defendants have failed intentionally, utterly, uniformly and repeatedly to protect the plaintiff from their staff, agents, employees and all persons working in concert with them -- from using the 568 days of excessive force on the plaintiff by forcefully handcuffing him behind his back.

68. The defendants each acted with reckless or callous indifference to the plaintiff's dignity as a human being and to his Constitutional rights.

69. As a result of the defendants' acts and omissions, and the acts and omissions of other Department employees for whom the defendants were responsible, the plaintiff suffered severe pain, fear, anxiety, mental anguish, discomfort, embarrassment and humiliation, and serious physical and mental injuries.

70. Prior to the commencement of this action the plaintiff completely exhausted all of his administrative remedies as available with respect to each claim.

### First Claim For Relief
(Declaratory Judgment pursuant to 28 U.S.C. § 2201 against all defendants)

71. Plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 70.

72. There is an actual controversy between the plaintiff and the defendants concerning the existence, nature, scope and severity of

– 27 –

the violation of plaintiff's rights under the United States Constitution.

73. The plaintiff is entitled to a declaration of his rights and remedies.

Second Claim For Relief
(Denial of out-of-cell exercise against defendants Armstrong, Tokarz, Matos, Myers, Coates, Lajoie and Whidden, pursuant to 42 U.S.C. § 1983)

74. Plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 44.

75. By failing to provide the plaintiff with, and by failing to ensure the provisions of, out-of-cell exercise, the defendants knowingly violated the plaintiff's clearly established right to out-of-cell exercise.

76. The defendants were personally involved in and responsible for the denial of out-of-cell

exercise in that:

a. They participated directly in the Constitutional Violations';

b. After being informed of the violations, they failed to remedy the wrong;

c. They created a policy and custom, and they allowed the continuance of a policy and custom, under which inmates would be deprived of out-of-cell exercise;

d. They were deliberately indifferent in supervising and training subordinates who committed the wrongful acts described herein; and

e. They exhibited deliberate indifference to the plaintiff's rights by failing to act on information indicating that Unconstitutional acts were occurring.

77. By failing to provide the plaintiff with, and by failing to ensure the provisions of out-of-

cell exercise, the defendants Knowingly subjected plaintiff to pain, and physical and mental injuries, thereby violating plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

## Third Claim For Relief

(Deliberate Indifference -- Failure to provide Constitutionally adequate medical care -- against all defendants, pursuant to 42 U.S.C. § 1983)

78. Plaintiff realleges and incorporates herein by reference each and every allegation in paragraphs 1 through 70.

79. By failing to provide the plaintiff with, and by failing to ensure the provisions of, Constitutionally adequate medical care, the defendants Knowingly disregarded an excessive risk to plaintiff's health and well being and Knowingly subjected him to pain, and physical and mental injuries, thereby violating plaintiff's rights under the Eighth and Fourteenth Amendments to the United States

Constitution.

### Fourth Claim For Relief
(Excessive Force -- against all defendants, pursuant to 42 U.S.C. § 1983)

80. Plaintiff realleges and incorporates herein by reference each and every allegation in paragraphs 1 through 70.

81. The force used by the defendants' staff, agents, employees and all persons working in concert with them, was unreasonable and excessive in violation of plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

### Fifth Claim For Relief
(Failure to Protect -- against all defendants, pursuant to 42 U.S.C. § 1983)

82. Plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 70.

83. The defendants each were on actual and constructive notice that their staff, agents, employees and all persons working in concert with them, were using excessive force on plaintiff by forcefully handcuffing him behind his back. Each defendant had the responsibility, authority and obligation to issue an order for plaintiff not to be handcuffed behind his back, but they intentionally failed and refused to do so, thereby knowingly, very maliciously subjecting plaintiff to severe physical and mental injuries.

84. The defendants were personally involved in and responsible for the failure to protect plaintiff in that:

  a. They participated directly in the Constitutional violations;

  b. After being informed of the violations, they failed to remedy the wrong;

  c. They created a policy and custom, and they

- 32 -

allowed the continuance of a policy and custom, under which inmates would be forcefully handcuffed behind their back even when a serious medical condition prevented such use of force;

d. They were deliberately indifferent in supervising and training subordinates who committed the wrongful acts described herein; and

e. They exhibited deliberate indifference to plaintiff's rights by failing to act on the information indicating that unconstitutional acts were occurring.

85. The acts and omissions of the defendants proximately caused plaintiff's suffering and injuries.

86. By failing to protect the plaintiff, the defendants knowingly disregarded an excessive risk to plaintiff's health and well being and knowing subjected him to severe

-33-

pain, and physical and mental injuries.
Thereby violating plaintiff's rights under
the Eighth and Fourteenth Amendments to the
United States Constitution.

<u>Sixth Claim For Relief</u>
(Retaliation — — against all defendants,
pursuant to 42 U.S.C. § 1983)

87. Plaintiff realleges and incorporates herein
by reference each and every allegation in
paragraphs 1. through 70.

88. The defendants each participate in,
condone, and intentionally fail and refuse
to remedy, a culture, pattern and practice of
severe retaliation and intimidation against
inmates confined in the Department, who
file and litigate lawsuits against Department
employees.

89. The retaliation is perpetrated by various
methods, all of which are routine and
widespread in the Department, and all of which
are known to, condoned, and at all times

inflicted personally by the defendants as described herein.

90. As a result of this culture, and this widespread pattern and practice, of severe and dangerous retaliation and intimidation, the defendants have subjected plaintiff to severe pain, and physical and mental injury, thereby violating plaintiff's First, Eighth and Fourteenth Amendments to the United States Constitution.

## Prayer For Relief

Wherefore, plaintiff Duane Ziemba prays for relief as follows:

1. For a declaration that the defendants, and each of them, subjected plaintiff to a violation of his Constitutional rights;

2. For compensatory damages of $400,000.00;

3. For punitive damages of $700,000.00;

4.  For costs and reasonable attorney fees; and

5.  For all such further relief as the court deems just and proper.

## Plaintiffs Jury Claim

The plaintiff herewith requests that all of his claims be tried before a jury.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Signed: Duane Ziemba
Duane Ziemba

Respectfully Submitted
The Plaintiff
Duane Ziemba
Duane Ziemba #128963
Northern C.I.
P.O. Box 665
Somers, CT. 06071

## Certification

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Fed.R.Civ.P. on this 11th day of July, 2004 to the following:

Lynn D. Wittenbrink
Assistant Attorney General
110 Sherman Street
Hartford, CT. 06105

By: Duane Ziemba
Duane Ziemba