Angel Caballero v. Warden

CV003178

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF TOLLAND

2003 Conn. Super. LEXIS 5


January 2, 2003, Decided
January 2, 2003, Filed

NOTICE:   [*1]  THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER
APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF
THE STATUS OF THIS CASE.

CASE SUMMARY

PROCEDURAL POSTURE:  Petitioner sought a writ of habeas corpus alleging that
respondent warden was violating the inmate's Eight Amendment right to be free
from cruel and unusual punishment.

OVERVIEW:  Petitioner alleged that his confinement at the correctional
institution was illegal because conditions in the prison were inhumane and
dangerous to him. Petitioner alleged that he had been denied recreation since
being placed at the institution due to the institution's policy of keeping
inmates held in administrative segregation, phase one, in full restrains during
the recreation period. Petitioner was kept in restraints during this period due
to his assaultive behavior toward guards and other inmates. In denying the
petition, the superior court found no evidence that petitioner had been
subjected to physical force that was repugnant to the conscience of mankind, nor
was there evidence of unnecessary and wanton infliction of pain. The court
concluded that the use of full restraints during the recreation period was
reasonable force applied in a good faith effort to maintain discipline
surrounding petitioner, an individual who had proven his tendency to resort to
violent behavior toward correction staff and other inmates. Thus, petitioner
failed to show that the use of the restraints violated the constitutional
prohibition against cruel and unusual punishment.

OUTCOME:  The petition for a writ of habeas corpus was denied.

CORE TERMS:  inmate, recreation, prison, cruel, cruel and unusual punishment,
administrative segregation, phase, doors, handcuffs, infliction of pain,
physical force, discipline, quotation, wanton, Eighth Amendment, handcuffed,
inhumane, cage, conditions of confinement, restrictive, deprivation, conscience,
subjected, repugnant, excessive, prisoner, offenders, mankind, harsh, writ of
habeas corpus

LexisNexis(R) Headnotes Hide Headnotes

Constitutional Law: Cruel & Unusual Punishment

[HN1] The United States Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. In its prohibition of cruel and unusual punishments, the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. The Eighth Amendment also imposes duties on these officials, who must provide humane conditions of confinement, prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.

Constitutional Law: Cruel & Unusual Punishment

[HN2] If a writ seeks to vindicate rights under the Eighth Amendment to the United States Constitution, the petitioner must establish, preferably by objective evidence, that his detention has subjected him to cruel and unusual punishment resulting from the unnecessary and wanton infliction of pain. But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

Constitutional Law: Cruel & Unusual Punishment

[HN3] The Eighth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, precludes the imposition of cruel and unusual punishment on an individual convicted of a crime. Cruel and unusual punishment encompasses more than barbarous physical punishment. It also includes punishments which involve the unnecessary and wanton infliction of pain and those which are grossly disproportionate to the severity of the crime.

Constitutional Law: Cruel & Unusual Punishment

[HN4] The test for determining whether a given set of conditions of confinement violates the Eighth Amendment is not static. It is determined by the evolving standards of decency that mark the progress of a maturing society. These standards are established not by the opinion of experts as to desirable prison conditions, nor by the subjective views of judges, but rather by objective factors to the maximum extent possible. Unquestioned and serious deprivations of basic human needs and deprivation of the minimal civilized measure of life's necessities are obvious cases of Eighth Amendment violations. But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders

pay for their offenses against society.

Constitutional Law: Cruel & Unusual Punishment

[HN5] Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

Constitutional Law: Cruel & Unusual Punishment

[HN6] he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind.

JUDGES: S.T. FUGER, JR., JUDGE.

OPINIONBY: S Fuger

OPINION: MEMORANDUM OF DECISION

On May 24, 2000, the petitioner filed a petition for a writ of habeas corpus alleging that the respondent warden is violating the petitioner's Eighth Amendment right under the United States Constitution to be free from cruel and unusual punishment. More specifically, the petitioner alleges that "his confinement at [the correctional] institution is illegal because specific conditions in the prison are inhumane and dangerous to [the] petitioner." Am. Pet., at 2.

In support of his petition, the petitioner attached a statement of facts that, in relevant part, states: "That the petitioner has been denied recreation since being placed at the Northern Correctional Institution [hereinafter 'NCI'] due to the institution's policy of keeping inmates in full restraints during the one-hour per day recreation period. That inmates are handcuffed behind the back, shackled at the ankles, and these two restraints are connected by a heavy tether chain with a lock. [*2] That inmates are then led out to a cage, commonly referred to [as] 'the kennel' because it so closely resembles a small dog's cage. That inmates remain in full restraints while in the kennel. That in full restraints, in a cage, within a recreation yard which is also caged at the top of its four cement walls, inmates receive absolutely no opportunity to recreate." Id., at 5-6. The respondent denies the petitioner's allegation that these measures violate the petitioner's right to be free from cruel and unusual punishment. For the reasons set forth more fully below, the petition shall be denied.

This matter came before the court for trial on October 4, 2002. The petitioner and Department of Correction Major Thomas Coates testified at the

trial. Additionally, the court received into evidence two exhibits: copies of the petitioner's request forms and grievances filed with the Department of Correction regarding the claim raised in the present petition, as well as a copy of the Department of Correction Administrative Directive 9.4 (hereinafter "A.D. 9.4"). The court has reviewed all of the testimony and evidence and makes the following findings of fact.

FINDINGS OF FACT

    1. The[*3] petitioner was in the custody of the Commissioner of Correction at the time he filed the present petition and has remained incarcerated.

    2. The petitioner is being held in administrative segregation, phase one, due to his past assaultive behavior towards guards and other inmates.

    3. Administrative segregation is not an additional punishment imposed upon an inmate, but instead allows for the safe management of violent inmates who, because of violent behavior or management factors pose a threat to the security of the facility or a risk to the safety of staff or other inmates, can no longer be safely managed in general population.

    4. The petitioner is afforded, in accordance with A.D. 9.4, one hour of exercise in a recreation area that is approximately 25' by 30,' surrounded by 30' wall and caged at the top. There are two doors into this recreation facility. The respondent does not consider the recreation facility to be a secure area due to the size of the space, the presence of the two doors and problems with the complete security of the doors.

    5. A.D. 9.4 requires that inmates in administrative segregation, phase one, shall, prior to release from a cell, be handcuffed behind the[*4] back except when making a phone call, at which time the inmates be handcuffed in front before leaving the cell. Handcuffs may be removed when an inmate is in a secure shower or secure individual recreation area.

    6. Inmates in administrative segregation, phase one, are permitted recreation one (1) hour per day, five (5) days a week in a controlled area, excluding holidays. Restraints (handcuffs) are required unless in a secure individual recreation area. Inmates on restraint status shall not receive recreation with an inmate not on restraint status.

DISCUSSION OF LAW

        [HN1] "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. In its prohibition of cruel and unusual punishments, the Eighth Amendment places restraints on prison officials,

who may not, for example, use excessive physical force against prisoners. The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, [*5] clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." (Internal citations and quotation marks omitted.) Farmer v. Brennan, 511 U.S. 825, 832, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994).

   "In Arey v. Warden, 187 Conn. 324 [328-29], 445 A.2d 916 (1982), that court held that,    [HN2] if a writ seeks to vindicate rights under the eighth amendment to the United States constitution, the petitioner must establish, preferably by objective evidence, that his detention has subjected him to cruel and unusual punishment resulting from the unnecessary and wanton infliction of pain. But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. (Internal quotation marks omitted.) Hunnicutt v. Commissioner of Correction, 67 Conn.App. 65, 69, 787 A.2d 22 (2001).

       [HN3] "The eighth amendment to the United States constitution, which is applicable to the states through the fourteenth amendment, precludes[*6] the imposition of cruel and unusual punishment on an individual convicted of a crime. Cruel and unusual punishment encompasses more than barbarous physical punishment. It also includes punishments which involve the unnecessary and wanton infliction of pain and those which are grossly disproportionate to the severity of the crime.

       [HN4] "The test for determining whether a given set of conditions of confinement violates the eighth amendment is not static. It is determined by the evolving standards of decency that mark the progress of a maturing society. These standards are established not by the opinion of experts as to desirable prison conditions, nor by the subjective views of judges, but rather by objective factors to the maximum extent possible. Unquestioned and serious deprivations of basic human needs and deprivation of the minimal civilized measure of life's necessities are obvious cases of eighth amendment violations . . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against[*7] society." (Internal citations and quotation marks omitted.) Arey v. Warden, supra, 187 Conn. at 328-29.

   In Hudson v. McMillian, 503 U.S. 1, 6-7, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992), the United States Supreme Court held "that,    [HN5] whenever prison officials stand accused of using excessive physical force in violation of

the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."     [HN6] "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 10-11.

While the petitioner alleges that his confinement is illegal because specific conditions in the prison are inhumane and dangerous, there is no evidence to show that the petitioner has been subjected to physical force that is repugnant to the conscience of mankind. Nor is there evidence of unnecessary and wanton infliction of pain. The petitioner was placed[*8] in administrative segregation, phase one, because of assaultive behavior toward guards and other inmates. A.D. 9.4 requires that inmates in administrative segregation, phase one, be restrained during the recreational period. While A.D. 9.4 gives the respondent the discretion to remove handcuffs when an inmate is in a secure individual recreation area, there is no requirement that the handcuffs must be removed in a secure recreation area. Stated differently, the applicable directives allow, but do not require, the removal of restraints when the inmate is in a secure area, and the respondent is under no mandate to remove the petitioner's restraints.

The respondent, who is responsible for maintaining internal order and discipline, as well as securing correctional institutions against unauthorized access or escape, does not consider the recreational facility in which the petitioner exercises to be a secure area due to the size of the space, the presence of the two doors and problems with the complete security of the doors. Such a determination is entirely in the province of the respondent, and courts, who are ill equipped to deal with the problems of prison administration, should [*9]abstain from attempting to resolve prison problems by decree. Washington v. Meachum, 238 Conn. 692, 732-33, 680 A.2d 262 (1996). The use of full restraints during the recreation period is, in this court's conclusion, reasonable force applied in a good faith effort to maintain discipline surrounding the petitioner, an individual who has proven his tendency to resort to violent behavior toward correction staff and other inmates.

Based on the foregoing, this court concludes that the petitioner has failed to show that the restraints applied by the respondent to the petitioner during his recreation violate the constitutional prohibition against cruel and unusual punishment.

Accordingly, the petition for a writ of habeas corpus is denied.

S.T. FUGER, JR., JUDGE

James C. Tillman v. Warden, State Prison

CV023659

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF TOLLAND,
GEOGRAPHICAL AREA 19 AT ROCKVILLE

2003 Conn. Super. LEXIS 530

February 26, 2003, Decided
February 26, 2003, Filed

NOTICE: [*1]  THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER
APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF
THE STATUS OF THIS CASE.

DISPOSITION: Respondent's motion for summary judgment granted and petition for
writ of habeas corpus dismissed.

CASE SUMMARY

PROCEDURAL POSTURE:  Respondent warden filed a motion for summary judgment,
where petitioner inmate filed a petition for a writ of habeas corpus alleging
that his conditions of confinement constituted cruel and unusual punishment in
violation of Conn. Const. art. I, @ 8, and U.S. Const. amend. VIII.

OVERVIEW:  The inmate was confined in the administrative segregation program.
This was a three-phase program designed for prisoners who presented significant
behavioral problems. The inmate was in phase one of the program. Inmates in
phase one were to be reviewed after six months to determine their eligibility
for phase two, in which only handcuffs were used when inmates exited their
cells. All prisoners in phase one were required to be in full restraints
whenever they exited their cells. When the inmate was taken out of his cell for
recreation, he was handcuffed behind his back with shackles on his feet and a
chain tether going from the shackles to the handcuffs. The inmate was placed in
a room and given one hour for recreation and exercise. The restraints made
exercise difficult, if not impossible. The inmate's claim failed. There was no
claim that the restraints adversely affected or jeopardized the inmate's health.
Because the administrative segregation was designed for prisoners who presented
significant behavioral problems, the application of these restraints was not an
excessive use of force.

OUTCOME:  The warden's motion for summary judgment was granted, and the petition
for writ of habeas corpus was dismissed.

CORE TERMS:  prison, inmate, prisoner, phase, recreation, cruel, staff, summary
judgment, handcuffs, cruel and unusual punishment, conditions of confinement,
infliction of pain, quotation, wanton, administrative segregation, cell, grossly
disproportionate, writ of habeas corpus, constitutional rights, unusual
punishment, restrictive, severity, shackles, incarcerated, genuine issue of
material fact, adversely affected, sentence imposed, physical force, wide range,
cause pain

LexisNexis(R) Headnotes  Hide Headnotes

Civil Procedure: Trials: Judgment as Matter of Law
Civil Procedure: Summary Judgment: Summary Judgment Standard
    [HN1] A directed verdict may be rendered only where, on the evidence
viewed in the light most favorable to a nonmovant, the trier of fact could not
reasonably reach any other conclusion than that embodied in the verdict as
directed. The genuine issue aspect of summary judgment procedure requires the
parties to bring forward before trial evidentiary facts, or substantial evidence
outside the pleadings, from which the material facts alleged in the pleadings
can warrantably be inferred. Although the party seeking summary judgment has the
burden of showing the nonexistence of material fact, a party opposing summary
judgment must substantiate its adverse claim by showing that there is a genuine
issue of material fact together with the evidence disclosing the existence of
such a dispute issue.

Constitutional Law: Cruel & Unusual Punishment
    [HN2] The Eighth Amendment to the United States Constitution, which is
applicable to the states through the Fourteenth Amendment, precludes the
imposition of cruel and unusual punishment on an individual convicted of a
crime. Cruel and unusual punishment encompasses more than barbarous physical
punishment. It also includes punishments which involve the unnecessary and
wanton infliction of pain, and those which are grossly disproportionate to the
severity of the crime. The test for determining whether a given set of
conditions of confinement violates the Eighth Amendment is not static. It is
determined by the evolving standards of decency that mark the progress of a
maturing society. These standards are established not by the opinion of experts
as to desirable prison conditions, nor by the subjective views of judges, but
rather by objective factors to the maximum extent possible. Unquestioned and
serious deprivations of basic human needs and deprivation of the minimal
civilized measure of life's necessities are obvious cases of Eighth Amendment
violations. But conditions that cannot be said to be cruel and unusual under
contemporary standards are not unconstitutional. To the extent that such
conditions are restrictive and even harsh, they are part of the penalty that
criminal offenders pay for their offenses against society.

Constitutional Law: Cruel & Unusual Punishment

[HN3] In the context of whether punishment constitutes cruel and unusual punishment, the punishment of incarcerated prisoners effectuates prison management and prisoner rehabilitative goals. Admittedly, prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying the penal system. Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law. A broad range of choices that might infringe constitutional rights in free society fall within the expected conditions of confinement of those who have suffered a lawful conviction. The limitation on prisoners' privileges and rights also follows from the need to grant necessary authority and capacity to federal and state officials to administer the prisons. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life.

Constitutional Law: Cruel & Unusual Punishment

[HN4] In the context of cruel and unusual punishment, a convicted felon's life in prison differs from that of an ordinary citizen. In the context of a legitimate rehabilitation program for prisoners, those same considerations are relevant to a court's analysis. The compulsion inquiry must consider the significant restraints already inherent in prison life and the State's own vital interests in rehabilitation goals and procedures within the prison system.

Constitutional Law: Cruel & Unusual Punishment

[HN5] Cruel and unusual punishment refers to punishment that involves the unnecessary and wanton infliction of pain or is grossly disproportionate to the severity of the crime. In its prohibition of cruel and unusual punishments, the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. The Eighth Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.

Constitutional Law: Cruel & Unusual Punishment
Criminal Law & Procedure: Habeas Corpus: Cognizable Issues

[HN6] Although a writ of habeas corpus properly might challenge the legality of an inmate's detention, the scope of such a writ is limited to the vindication of an inmate's constitutional rights. If a writ seeks to vindicate rights under the Eighth Amendment to the United States Constitution, a petitioner must establish, preferably by objective evidence, that his detention has subjected him to cruel and unusual punishment resulting from the unnecessary and wanton infliction of pain. But conditions that cannot be said to be cruel

and unusual under contemporary standards are not unconstitutional. To the extent
that such conditions are restrictive and even harsh, they are part of the
penalty that criminal offenders pay for their offenses against society.

Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner
Rights
      [HN7] Conn. Code Penal Disc. Admin. Directive 9.4 defines administrative
segregation as placement of an inmate on a restrictive housing status that
results in segregation of the inmate whose behavior, while incarcerated, poses a
threat to the security of the facility or a risk to the safety of staff or other
inmates, and that the inmate can no longer be safely managed in general
population. Once placed in administrative segregation, an inmate's
classification status is subject to periodic review. Administrative segregation
is a level five confinement, which is reserved for inmates who are assessed to
have violent tendencies and who pose a safety threat to other inmates and to
prison staff. Inmates assigned to administrative segregation are given a
handbook providing information on the rules and procedures applicable to their
confinement.

Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner
Rights
      [HN8] Discipline by prison officials in response to a wide range of
misconduct falls within the expected perimeters of the sentence imposed by a
court of law.

JUDGES: S. T. Fuger, Jr., Judge.

OPINIONBY: S. T.  Fuger , Jr.

OPINION: MEMORANDUM OF DECISION ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND
JUDGMENT OF DISMISSAL

    On May 28, 2002, the petitioner filed a petition for a writ of habeas corpus
alleging that the conditions of confinement constitute cruel and unusual
punishment in violation of both Article First, Section 8 of the Connecticut
Constitution and the Eighth Amendment to the United States Constitution.
More specifically, the petitioner alleges that restraints such as shackles,
cuffs and tethers applied during a one-hour recreation period cause pain and
prevent him from exercising in a vigorous manner and thus are cruel and unusual
punishment. The petitioner seeks a permanent court order against the respondent
requiring restraint-free recreation and requests that the order extend to all
those similarly situated in the custody of the respondent. The respondent has
filed a motion[*2] for summary judgment because there are no genuine issues of
material fact. For the reasons set forth more fully below, the motion shall be
granted and the petition shall be dismissed.

FINDINGS OF FACT

1. The petitioner was in the custody of the Commissioner of Correction serving a forty-five year sentence at the time he filed the present petition and has remained incarcerated.

2. The petitioner is currently confined in the Administrative Segregation (A.S.) program at Northern Correctional Institution. A.S. is a three-phase program designed for prisoners who have presented significant behavioral problems.

3. All prisoners in Phase I of the A.S. program are required to be in full restraints whenever they exit their cell, to include out-of-cell recreation.

4. Prisoners assigned to Phase I are reviewed for progression to Phase II after six months. Phase I prisoners who have not successfully completed Phase I will remain in Phase I. Upon progression to Phase II, prisoners are required to wear only handcuffs upon exiting their cell, for the first thirty days. After that, prisoners are allowed out of their cells to recreate without restraints.

5. The petitioner is taken out[*3] of his cell handcuffed behind his back with shackles on his feet and a chain tether going from the shackles to the handcuffs. The petitioner is then placed in a room and given one hour for recreation and exercise. All restraints stay on for the one-hour period. The restraints allow for limited movement and make exercise difficult, if not impossible.

6. The handcuffs do not fit right, cause pain to the petitioner's shoulders and prevent him from exercising in the manner in which he wants to exercise. The petitioner can address the physical problems arising from use of the handcuffs via a medical visit.

DISCUSSION OF LAW

[HN1] "A directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Emphasis in original.)  Miller v. United Technologies Corp., 233 Conn. 732, 752, 660 A.2d 810 (1995). "The genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged[*4] in the pleadings can warrantably be inferred." United Oil Co. v. Urban Development Commission, 158 Conn. 364, 378-79, 260 A.2d 596 (1969). "Although the party seeking summary judgment has the burden of showing the nonexistence of material fact, . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of

such a dispute issue." Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554, 707 A.2d 15 (1998),

[HN2] "The eighth amendment to the United States constitution, which is applicable to the states through the fourteenth amendment, precludes the imposition of cruel and unusual punishment on an individual convicted of a crime. Cruel and unusual punishment encompasses more than barbarous physical punishment. It also includes punishments which involve the unnecessary and wanton infliction of pain, and those which are grossly disproportionate to the severity of the crime.

"The test for determining whether a given set of conditions of confinement violates the eighth amendment is not static. It is determined by the evolving standards of decency[*5] that mark the progress of a maturing society. These standards are established not by the opinion of experts as to desirable prison conditions, nor by the subjective views of judges, but rather by objective factors to the maximum extent possible. Unquestioned and serious deprivations of basic human needs and deprivation of the minimal civilized measure of life's necessities are obvious cases of eighth amendment violations . . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." (Internal citations and quotation marks omitted." Arey v. Warden, 187 Conn. 324, 328-29, 445 A.2d 916 (1982),

[HN3] "The punishment of incarcerated prisoners . . . effectuates prison management and prisoner rehabilitative goals. Admittedly, prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal[*6] system. Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin v. Conner, 515 U.S. 472, 485, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995),

"A broad range of choices that might infringe constitutional rights in free society fall within the expected conditions of confinement of those who have suffered a lawful conviction . . .

"The limitation on prisoners' privileges and rights also follows from the need to grant necessary authority and capacity to federal and state officials to administer the prisons. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life . . .

". . . Sandin and its counterparts underscore the axiom that    [HN4] a convicted felon's life in prison differs from that of an ordinary citizen. In the context of a legitimate rehabilitation program for prisoners, those same considerations[*7] are relevant to our analysis. The compulsion inquiry must consider the significant restraints already inherent in prison life and the State's own vital interests in rehabilitation goals and procedures within the prison system." (Internal citations and quotation marks omitted.) McKune v. Lile , (2002).

[HN5] "Cruel and unusual punishment refers to punishment that involves the unnecessary and wanton infliction of pain or is grossly disproportionate to the severity of the crime. In its prohibition of cruel and unusual punishments, the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of the inmates." (Internal citations and quotations omitted.)    Santiago v. Commissioner of Correction, 39 Conn.App. 674, 683, 667 A.2d 304 (1995).

"In    Sanchez v. Warden, 214 Conn. 23, 570 A.2d 673 (1990), our Supreme Court concluded that, [*8]    [HN6] although a writ of habeas corpus properly might challenge the legality of an inmate's detention, the scope of such a writ was limited to the vindication of an inmate's constitutional rights. In Arey v. Warden, [supra,] that court held that, if a writ seeks to vindicate rights under the eighth amendment to the United States constitution, the petitioner must establish, preferably by objective evidence, that his detention has subjected him to cruel and unusual punishment resulting from the unnecessary and wanton infliction of pain. But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." (Internal citations and quotation marks omitted.)    Hunnicutt v. Commissioner of Correction, 67 Conn.App. 65, 69, 787 A.2d 22 (2001).

[HN7] "Administrative Directive 9.4 defines administrative segregation as 'placement of an inmate on a Restrictive Housing Status that results in segregation of the inmate whose behavior, while incarcerated, poses a threat[*9] to the security of the facility or a risk to the safety of staff or other inmates, and that the inmate can no longer be safely managed in general population. Once placed in administrative segregation, an inmate's classification status is subject to periodic review."    Beasley v. Commissioner of Correction, 50 Conn.App. 421, 425, 718 A.2d 487 (1998), aff'd,  249 Conn. 499, 733 A.2d 833 (1999). "Administrative segregation is a

level five confinement, which is reserved for inmates who are assessed to have violent tendencies and who pose a safety threat to other inmates and to prison staff. Inmates assigned to administrative segregation are given a handbook providing information on the rules and procedures applicable to their confinement." Beasley v. Commissioner of Correction, supra, 50 Conn.App. at 423 n.3.

In Arey, the Supreme Court noted that "whether or not one hour of outside recreation five days a week is sufficient [to support the conclusion of cruel and unusual punishment], there was no claim and no evidence to support a claim that the plaintiff's health has been jeopardized or adversely affected by the claimed inadequacy of[*10] the recreation activity. Absent such evidence, what may be desirable is not necessarily constitutionally mandated." Arey v. Warden, supra, 187 Conn. at 330. In the present matter, while the petitioner does claim that he suffers pain from application of the handcuffs and that his ability to exercise freely is inhibited, there is no claim that the petitioner's health has been jeopardized or adversely affected by the use of restraints during the recreational period.

The conditions commensurate with A.S. are restrictive. The A.S. program is, however, designed for prisoners who have presented significant behavioral problems, have violent tendencies and pose a safety threat to other inmates and prison staff. The application of varying degrees of restraint, depending on the A.S. phase level, does not involve the unnecessary and wanton infliction of pain, is not grossly disproportionate to the severity of the crime and is not excessive use of physical force against inmates.    [HN8] "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin v. Conner, supra, 515 U.S. at 485. [*11]

In fact, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates and prison staff. Santiago v. Commissioner of Correction, supra, 39 Conn.App. at 683. Inmates such as the petitioner have demonstrated their danger to the safety of other inmates or the prison staff, and the respondent, were the respondent to not administer programs such as A.S., would likely run afoul of the Eighth Amendment. Tampering by the court with programs such as A.S., which have a clearly defined penological justification and utility, is tantamount to meddling in the minutiae of prison life and the administration of prison facilities.

When the petitioner's claims and evidence are viewed in the light most favorable to the petitioner, no other conclusion can reasonably be reached than that there is no genuine issue of material fact to be tried.

Accordingly, the respondent's motion for summary judgment shall be granted and the petition for a writ of habeas corpus shall be dismissed.

14

S. T. Fuger, Jr., Judge

BRUCE WAPLES, Plaintiff, v. RICK KEARNEY and MEDICAL
DEPARTMENT, Defendants.

Civil Action No.: 00-210-GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2001 U.S. Dist. LEXIS 9050

March 13, 2001, Decided

DISPOSITION: [*1] Kearney's and PHS's Motions to Dismiss GRANTED pursuant to
Fed. R. Civ. P. 12(b)(6), Waples' complaint DISMISSED.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff, pro se prisoner, sued defendants, the warden and
the prison medical department, under 42 U.S.C.S. a 1983 alleging that he
was deprived of proper medical care in violation of the Eighth Amendment. The
warden and the medical department filed separate motions to dismiss for failure
to state a claim upon which relief could be granted pursuant to Fed. R. Civ.
P. 12(b)(6).

OVERVIEW:  In order to hold the warden liable, the prisoner had to allege an act
or omission by the warden that demonstrated deliberate indifference to his
serious medical needs. The prisoner did not contend that the warden was
personally involved in the medical care provided to him. Absent some sort of
personal involvement in the allegedly unconstitutional conduct, the warden could
not be held liable under a respondeat superior theory. As for the medical
department, the prisoner's allegations failed to satisfy the deliberate
indifference prong of the test for liability for an Eighth Amendment
violation. The allegations of the complaint, even when construed in a light most
favorable to the prisoner, did not support a a 1983 claim against the medical
department.

OUTCOME:  The court granted the warden's and the health department's motions to
dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and dismissed the complaint.

CORE TERMS:  deliberate indifference, medical care, deprived, prong, Eighth
Amendment, infliction of pain, motions to dismiss, medical attention,
incarcerated, omission, wanton, warden, constitutional right, color of state
law, motion to dismiss, prison official, state of mind, pro se, deliberately,
indifferent, presently, favorable, prisoner, culpable, inmate, top

LexisNexis(R) Headnotes Hide Headnotes

Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

[HN1] See 42 U.S.C.S. a 1983.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Dismiss

[HN2] In ruling on a motion to dismiss, the factual allegations of the complaint must be accepted as true. Moreover, a court must view all reasonable inferences that may be drawn from the complaint in the light most favorable to the non-moving party. A court should dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

Civil Procedure: Joinder of Claims & Parties: Self-Representing Parties

[HN3] Where the plaintiff is pro se, the court must interpret his allegations liberally and must hold them to less stringent standards than formal pleadings drafted by lawyers.

Constitutional Law: Cruel & Unusual Punishment

[HN4] A state has an obligation to provide adequate medical care to the individuals who are incarcerated in its prisons. To recover for the denial of medical care, a prisoner must show that a prison official or employee was deliberately indifferent to his serious medical needs or acted with reckless disregard for his condition.

Constitutional Law: Cruel & Unusual Punishment
Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Dismiss

[HN5] In order to withstand a motion to dismiss, a claim that prison authorities provided inadequate medical care in violation of Eighth Amendment protections must include acts or omissions by a defendant that evidence deliberate indifference towards serious medical needs.

Constitutional Law: Cruel & Unusual Punishment
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

[HN6] The deliberate indifference prong is met only if the prison official knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. The plaintiff must show a sufficiently culpable state of mind which demonstrates an unnecessary and wanton infliction of pain. Mere allegations of negligence do not meet the pleading standards for deliberate indifference. Nor can the claim rest solely on the prisoner's dissatisfaction with the medical care he has received.

Constitutional Law: Cruel & Unusual Punishment
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

[HN7] An inmate's condition is "serious" when it is so obvious that an ordinary person would easily recognize the need for a doctor's attention or when a physician has concluded that treatment is required. The "seriousness" prong is met also if the effect of denying or delaying care results in wanton infliction of pain or a life-long handicap or permanent loss. In addition, the condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death.

Labor & Employment Law: Employer Liability: Tort Liability: Respondeat Superior
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

[HN8] Absent some sort of personal involvement in the allegedly unconstitutional conduct, a defendant cannot be held liable under a respondeat superior theory for an Eighth Amendment violation brought under 42 U.S.C.S. s 1983.

Constitutional Law: Cruel & Unusual Punishment
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

[HN9] A mere difference of opinion regarding the need for treatment, the preferred course of treatment, the severity of the alleged injury, or other medical judgment does not constitute a showing of deliberate indifference. Moreover, it is well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference.

COUNSEL: BRUCE WAPLES, plaintiff, Pro se, Georgetown, DE.

For RICK KEARNY, defendant: Stuart B. Drowos, Department of Justice, State of Delaware, Wilmington, DE.

For MEDICAL DEPARTMENT, defendant: Seth Jason Reidenberg, White & Williams, Wilmington, DE.

JUDGES: Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINIONBY: Gregory M. Sleet

OPINION: MEMORANDUM AND ORDER

In March of 2000, Bruce L. Waples ("Waples") filed this pro se prisoner civil rights action against Rick Kearney ("Kearney"), in his capacity as warden, and Prison Health Services ("PHS") (collectively, "the defendants"). n1 Waples is

presently incarcerated at the Sussex Correctional Institute ("S.C.I.") in
Georgetown, Delaware. In his complaint, Waples alleges that the defendants
deprived him of proper medical care in violation of the Eighth Amendment. See
42 U.S.C. a 1983 (1994). n2 In support of his allegations, Waples claims
that something "popped" in his back while he was a pretrial detainee. According
to Waples, this injury makes it difficult for him to climb into the top[*2] bunk
in his cell and is causing him constant problems and pain. Waples also claims
that, as a result of his injury, he was forced to sleep on the floor for
approximately two to three weeks. For these alleged wrongs, Waples is seeking
monetary relief as well as proper medical attention.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

    n1 Waples originally named the Medical Department as a defendant. In its
motion, PHS noted that it was the correct defendant because it was the
organization contracted with the State of Delaware to operate the medical
department at S.C.I.

    n2    [HN1]  42 U.S.C. a 1983 states: Every person who, under color
of any statute, ordinance, regulation, custom, or usage, or any State or
Territory or the District of Columbia, subjects, or causes to be subjected, any
citizen of the United States or other person within the jurisdiction thereof to
the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at law,
suit in equity, or other proper proceeding for redress. . . .

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*3]

    Presently before the court are the defendant's separate motions to dismiss
for failure to state a claim upon which relief can be granted pursuant to
Federal Rule of Civil Procedure 12(b)(6). Because Waples has failed to state a
claim upon which relief can be granted, the court will grant the defendants'
motions. The following sections discuss the basis for this decision more
thoroughly.

I. STANDARD OF REVIEW

    [HN2] In ruling on a motion to dismiss, the factual allegations of
the complaint must be accepted as true. See Graves v. Lowery, 117 F.3d 723,
726 (3d Cir. 1997); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).
Moreover, a court must view all reasonable inferences that may be drawn from the
complaint in the light most favorable to the non-moving party. See Jenkins
v. McKeithen, 395 U.S. 411, 421, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969);

Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991). A court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." See Graves, 117 F.3d at 726; Nami, 82 F.3d at 65[*4] (both citing Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). In addition,

[HN3] because Waples is pro se, the court must interpret his allegations liberally and must hold them to "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976); Zilich v. Lucht, 981 F.2d 694 (3d Cir. 1992).

II. DISCUSSION

In order to recover against the defendants, Waples must show that he was deprived of a constitutional right by a person acting under the color of state law. See, e.g., Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995) (citing Gomez v. Toledo, 446 U.S. 635, 640, 64 L. Ed. 2d 572, 100 S. Ct. 1920 (1980)). In this case, it is clear that the defendants were acting under color of state law because, at the time of the alleged incident, they were correctional officials or an agent at the institution where Waples was incarcerated. See Cespedes v. Coughlin, 956 F. Supp. 454, 465 (S.D.N.Y. 1997). Therefore, the court next turns to whether Waples has sufficiently[*5] alleged that any of the defendants deprived him of a constitutional right.

[HN4] The State of Delaware has an obligation to provide "adequate medical care" to the individuals who are incarcerated in its prisons. See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (citations omitted). To recover for the denial of medical care, Waples must show that a prison official or employee was deliberately indifferent to his serious medical needs or acted with reckless disregard for his condition. See Miller v. Correctional Medical Sys., Inc., 802 F. Supp. 1126, 1130 (D. Del. 1992).

Thus,    [HN5] in order to withstand a motion to dismiss, a claim that prison authorities provided inadequate medical care in violation of Eighth Amendment protections must include acts or omissions by a defendant that evidence deliberate indifference towards serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (stating that to succeed on such claims, plaintiffs must demonstrate that "(1) the defendants were deliberately indifferent to[*6] their medical needs and (2) that those needs were serious.").

[HN6] The deliberate indifference prong is met only if the prison official "knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S.

Ct. 1970 (1994); Rouse, 182 F.3d at 197. The plaintiff must show a
sufficiently culpable state of mind which demonstrates an unnecessary and wanton
infliction of pain. Wilson v. Seiter, 501 U.S. 294, 115 L. Ed. 2d 271, 111
S. Ct. 2321 (1991); Rouse, 182 F.3d at 197. Mere allegations of
negligence do not meet the pleading standards for deliberate indifference. See
Estelle, 429 U.S. at 105-106. Nor can the claim rest solely on the
prisoner's dissatisfaction with the medical care he has received.  Id. at
107.

[HN7] An inmate's condition is "serious" when it is so obvious that
an ordinary person would easily recognize the need for a doctor's attention or
when a physician[*7] has concluded that treatment is required. See Monmouth
County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326 (3d Cir.1987)). The
"seriousness" prong is met also if the effect of denying or delaying care
results in wanton infliction of pain or a life-long handicap or permanent loss.
Id. In addition, the "condition must be such that a failure to treat can be
expected to lead to substantial and unnecessary suffering, injury or death."
See Colburn v. Upper Darby Township, 946 F.2d 1017, 1023 (3d Cir. 1991).

With these standards in mind, the court turns to an analysis of Waples' claim
that the defendants deprived him of proper medical care.

A. WARDEN KEARNEY

In order to hold Kearney liable, Waples must allege an act or omission by
Kearney that demonstrates deliberate indifference to his serious medical needs.
See City of Canton v. Harris, 489 U.S. 378, 103 L. Ed. 2d 412, 109 S. Ct.
1197 (1989); Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). In his
complaint, Waples does not contend that Kearney was personally involved in the
medical care provided to him. Rather, Waples asserts "Kearny [sic] . [*8] . . he
is the warden . . . he is responsible for his staff." Thus, the Waples' claim
against Kearney is premised on the doctrine of respondeat superior. It is well
established, however, that      [HN8] absent some sort of personal
involvement in the allegedly unconstitutional conduct, a defendant cannot be
held liable under a respondeat superior theory. See Fagan v. City of
Vineland, 22 F.3d 1283, 1291 (3d Cir. 1994); Gay v. Petsock, 917 F.2d 768
(3d Cir. 1990). Because Waples complaint fails to allege any act or omission of
Kearney that demonstrates deliberate indifference to Waples serious medical
needs, the claim against Kearney must be dismissed.

B. PHS

Waples alleges that the medical department knew of his medical history and
that when he informed them several times that he was having trouble getting on
the top bed, he was denied proper medical attention. These allegations fail to
establish that PHS conduct constituted an "unnecessary and wanton infliction of

pain" as proscribed by the Eighth Amendment." See Estelle v. Gamble, 429 U.S. at 104. Although Waples may disagree with the medical experts on what he feels is proper[*9] medical attention,          [HN9] a mere difference of opinion regarding the need for treatment, the preferred course of treatment, the severity of the alleged injury, or other medical judgment does not constitute a showing of deliberate indifference. See White v. Napoleon, 897 F.2d 103, 110 (3rd Cir. 1990). Moreover, it is well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference. See Estelle, 429 U.S. at 105, Rouse, 182 F.3d at 196. Therefore, Waples' allegations against PHS fail to satisfy the deliberate indifference prong of the Estelle test n3.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

   n3 Because Waples has failed to satisfy the deliberate indifference prong, the court does not reach the question of whether Waples injuries were sufficiently serious.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -

   In sum, the allegations of the complaint, even when construed in a light most favorable to plaintiff, do not support a Section 1983 claim against PHS n4. Thus, Waples' claim[*10] against Kearney and PHS must be dismissed n5.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

   n4 The complaint could have alternatively been dismissed for failing to exhaust the administrative remedies available to Waples prior to filing a a 1983 action as required by the Prison Litigation Reform Act of 1996, 42 U.S.C. a 1997e(a).   Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000).

   n5 On October 20, 2000, defendant PHS filed a Motion to Stay Proceedings Pending Resolution of the motions to dismiss. By virtue of the court's disposition of the motions to dismiss, the motion to stay is rendered moot.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -

   For these reasons IT IS HEREBY ORDERED that:

1. Kearney's Motion to Dismiss (D.I. 16) is GRANTED pursuant to Fed. R. Civ. P. 12(b)(6).

2. PHS's Motion to Dismiss (D.I. 18) is GRANTED pursuant to Fed. R. Civ. P. 12(b)(6).

3. Waples' complaint (D.I. 2) is DISMISSED.

Dated: March 13, 2001

    Gregory M. Sleet

    UNITED STATES DISTRICT JUDGE

RICHARD M. CROSS, Plaintiff(s), vs. ROBERT L. AYERS, Warden,
Defendant(s).

No. C 97-4108 VRW (PR)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA

1998 U.S. Dist. LEXIS 16546

October 6, 1998, Decided
October 6, 1998, Filed

DISPOSITION: [*1] Defendant's motion to dismiss GRANTED. Judgment entered in
favor of defendant and against plaintiff.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff inmate brought a cause of action pursuant to
42 U.S.C.S. a 1983 against defendant warden and alleged that he had not
received proper medical care for chest pains. The warden filed a motion to
dismiss under Fed. R. Civ. P. 12(b)(6).

OVERVIEW:  The inmate asserted that the prison medical staff had been
deliberately indifferent to his medical needs. In response to the inmate's
medical complaints, the medical staff had seen the inmate over a dozen times,
taken x-rays, blood, and gall bladder tests, administered two EKGs, a nerve
conduction study and referred him to a neurologist for consultation. The medical
staff determined that the inmate's chest pains were likely due to gas and
advised that he not swallow and to try burping to remove the gas bubbles. The
court granted the warden's motion and found that the complaint and exhibits
unequivocally showed that the medical staff did not disregard the inmate's
medical complaints or fail to take reasonable steps to abate them. The court
reasoned that the inmate's disagreement with the medical advice and diagnosis
did not equate to deliberate indifference by the medical staff.

OUTCOME:  The court granted the warden's motion to dismiss and dismissed the
inmate's a 1983 claim that he had not received proper medical care for chest
pains.

CORE TERMS:  medical staff, motion to dismiss, failure to state a claim,
deliberately, indifferent, prisoner, chest, Eighth Amendment, prison official,
prison, abate, pains, bubble

LexisNexis(R) Headnotes Hide Headnotes

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action

[HN1] Dismissal is appropriate if plaintiff fails to state a claim upon which relief can be granted. A complaint should not be dismissed for failure to state a claim, however, unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Dismissal for failure to state a claim is a ruling on a question of law. Review is limited to the contents of the complaint and any attached exhibits. Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. From the facts alleged, a court also must draw all reasonable inferences in favor of the nonmoving party. But conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.

Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights

[HN2] A prison official violates the Eighth Amendment if he is deliberately indifferent to a prisoner's serious medical need. A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. A difference of opinion as to treatment is not sufficient, as a matter of law, to establish deliberate indifference.

COUNSEL: RICHARD M. CROSS, Plaintiff, Pro se, Crescent City, CA.

For PELICAN BAY STAY PRISON, ROBERT L. AYERS, defendants: James M. Humes, Deputy Attorney Gen., CA State Attorney General's Office, San Francisco, CA.

JUDGES: VAUGHN R. WALKER, United States District Judge.

OPINIONBY: VAUGHN R. WALKER

OPINION: ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiff, a prisoner at Pelican Bay State Prison, filed the instant pro se civil rights action under 42 USC a 1983 alleging that he has not received proper medical care for chest pains. Per orders filed on December 9, 1997 and May 4, 1998, the court found that plaintiff's allegations, liberally construed, stated a cognizable claim for injunctive relief against the warden and ordered the U.S. Marshal to serve him. Defendant now moves for dismissal under Federal Rule of Civil Procedure 12(b)(6).

DISCUSSION
A. Standard of Review

[HN1] Dismissal is appropriate if plaintiff fails to state a claim upon which relief can be granted. See Fed R Civ P 12(b)(6). A complaint should not be dismissed for failure to state a claim, however, unless it appears [*2] beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Terracom v Valley Nat'l Bank, 49 F.3d 555, 558 (9th Cir 1995). Dismissal for failure to state a claim is a ruling on a question of law. See Parks School of Business, Inc., v Symington, 51 F.3d 1480, 1483 (9th Cir 1995).

Review is limited to the contents of the complaint and any attached exhibits. See id at 1484. Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. See id. From the facts alleged, the court also must draw all reasonable inferences in favor of the nonmoving party. See Usher v City of Los Angeles, 828 F.2d 556, 561 (9th Cir 1987). But conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim. See McGlinchy v Shell Chemical Co., 845 F.2d 802, 810 (9th Cir 1988).

B. Analysis

[HN2] A prison official violates the Eighth Amendment if he is deliberately indifferent to a prisoner's serious medical need. See Estelle v Gamble, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). A prison official is deliberately[*3] indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. See Farmer v Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994). A difference of opinion as to treatment is not sufficient, as a matter of law, to establish deliberate indifference. See Sanchez v Vild, 891 F.2d 240, 242 (9th Cir 1989).

Here, plaintiff claims that prison medical staff have been deliberately indifferent to his medical needs because they have not properly diagnosed and treated his chest pains. The complaint and attached exhibits show that prison medical staff have addressed and evaluated plaintiff's complaints frequently and exhaustively and diagonosed them as likely due to gas. The exhibits specifically show that in response to plaintiff's complaints, medical staff have seen plaintiff more than a dozen times over a two-year period, taken x-rays, blood and gall bladder tests, administered two EKGs, a nerve conduction study and even referred him to a neurologist for consultation. There has been no evidence of cardiac or neurological disease. On July 25, 1997, plaintiff was examined by Dr. D. [*4] Thor after a repeat EKG. Dr. Thor noted that the EKG was normal but that plaintiff appeared to have been swallowing air (aerophagia) and had a large gas bubble in his mid to left upper quadrant-lower left chest. Plaintiff was advised to eliminate this habit and to try burping to remove the gas bubbles.

The complaint and exhibits unequivocally show that medical staff have not disregarded plaintiff's complaints or failed to take reasonable steps to abate them. See Farmer, 511 U.S. at 837. Plaintiff simply disagrees with the uniform judgment and diagnosis of medical staff. Plaintiff's disagreement does not give rise to an Eighth Amendment claim for which he is entitled to relief. See Sanchez, 891 F.2d at 242. n1

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 There is no indication that this case presents the rare scenario in which the course of treatment medical staff chose was medically unacceptable under the circumstances and in which they chose this course in conscious disregard of an excessive risk to plaintiff's health. Cf Jackson v McIntosh, 90 F.3d 330, 332 (9th Cir 1996).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*5]

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

The Clerk shall enter judgment in favor of defendant and close the file.

SO ORDERED.

VAUGHN R. WALKER

United States District Judge

JUDGMENT. - ENTERED IN CIVIL DOCKET OCT 07 1998

Fed. R. Civ. Pro. 58

In accordance with the court's order of October 6, 1998, defendant's motion to dismiss is GRANTED. Judgment is entered in favor of defendant and against plaintiff.

Dated: 10-6-98

TIMOTHY M. FILLEBROWN, Plaintiff vd. RICK ZETTLEMOYER,
DEBBIE COMP, BRENDA PITRIZZO, and HEATHER FLURER, in their
official and individual capacities, Defendants

CIVIL ACTION No. 95-4394

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

1996 U.S. Dist. LEXIS 11495

August 8, 1996, Decided
August 9, 1996, FILED

DISPOSITION: [*1] Defendants' Motion for Summary Judgment granted.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff pre-trial detainee brought a 42 U.S.C.S. a
1983 claim against defendants, a prison warden and members of the prison staff,
claiming violation of his constitutional rights to due process in both the
medical treatment given him and the conditions of confinement. Before the court
was the motion for summary judgment of the warden and prison staff.

OVERVIEW:  The pre-trial detainee, who weighed approximately 250 pounds, was
hurt when he fell from a prison bunk bed that tilted as he tossed and turned in
it. In his a 1983 action, he claimed the bed was defectively designed and
maintained and that the medical care he was given as a result of the fall was
inadequate. Because plaintiff was not a convicted prisoner when the alleged
unconstitutional conduct occurred, his claims had to be judged under Fourteenth
Amendment standards, an essential element of which required showing deliberate
indifference by the warden and prison staff with respect to the medical care
given the pre-trial detainee and the conditions of confinement. Granting summary
judgment to the warden and prison staff, the court found that deliberate
indifference was missing from both claims. With respect to the medical care,
because the warden and staff relied on the advice of a treating physician, which
they were allowed to do, deliberate indifference was missing. Deliberate
indifference was also not shown with respect to the bunk bed, because it was a
standard model, and there was no evidence that the staff or warden had any prior
knowledge of problems relating to it.

OUTCOME:  The court granted summary judgment to the warden and prison staff in
the civil rights action filed against it by the pre-trial detainee.

CORE TERMS:  prison, bunk, inmate, summary judgment, medical care, bunk bed, indifferent, infirmary, conditions of confinement, deliberate indifference, deliberately, treating physician, prisoner, detainee, pre-trial, staff, medical treatment, Eighth Amendment, professional judgment, bed, Fourteenth Amendment, defectively designed, doctor, deposition, top, entitled to summary judgment, cruel and unusual punishment, constitutional violation, infliction of pain, failure to provide

LexisNexis(R) Headnotes  Hide Headnotes

Civil Procedure: Summary Judgment: Burdens of Production & Proof
Civil Procedure: Summary Judgment: Summary Judgment Standard

    [HN1] Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In order to defeat a motion for summary judgment, the nonmoving party must adduce more than a mere scintilla of evidence in its favor.

Constitutional Law: Cruel & Unusual Punishment
Constitutional Law: Substantive Due Process: Scope of Protection

    [HN2] A pre-trial detainee's claims of alleged unconstitutional conduct must be evaluated under the Fourteenth Amendment rather than the Eighth Amendment to the United States Constitution. Eighth Amendment scrutiny is appropriate only after the state has complied with the constitutional guarantees traditionally associated with criminal prosecutions. The inquiry under the Fourteenth Amendment is whether the conditions of confinement or the inadequacy of medical care received by the plaintiff amount to punishment of the detainee or are mere incident of legitimate regulatory restraint. The United States Court of Appeals for the Third Circuit has held that the standards for determining whether conditions of confinement, including medical care, can be considered impermissible "punishment" are essentially the same as those for determining whether prison conditions violate the Eighth Amendment.

Constitutional Law: Substantive Due Process: Scope of Protection

    [HN3] Whether one characterizes the treatment received by an inmate as inhuman conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the deliberate indifference standard to the defendants.

Constitutional Law: Cruel & Unusual Punishment
Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights

[HN4] The United States Supreme Court has held that, although an accidental or inadvertent failure to provide adequate medical care to a prisoner would not rise to the level of a constitutional violation, deliberate indifference to serious medical needs of prisoners would constitute an unnecessary and wanton infliction of pain and thus would violate the Eighth Amendment's prohibition against cruel and unusual punishment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. In order to establish that prison officials were deliberately indifferent to an inmate's serious medical needs, an inmate must provide evidence that the officials had actual knowledge of his objectively serious medical condition, and deliberately denied or delayed adequate treatment for that condition.

Constitutional Law: Cruel & Unusual Punishment
Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights

[HN5] In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. The law is clear that simple medical malpractice is insufficient to present a constitutional violation, a prisoner must show more than negligence, he must show deliberate indifference to a serious medical need.

Constitutional Law: Substantive Due Process: Scope of Protection

[HN6] Prison administrators and the nursing staff of a prison infirmary cannot be found to be deliberately indifferent for failing to defer to an inmate's judgment about appropriate diagnostic care when it contradicts the recommendations of the treating physician.

Torts: Vicarious Liability: Respondeat Superior
Labor & Employment Law: Employer Liability: Tort Liability: Respondeat Superior
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

[HN7] Where there is no evidence--even an allegation by the plaintiff--that the prison warden participated in the alleged wrongdoing by having actual knowledge of the plaintiff's situation and acquiescing in its occurrence or continuation, the plaintiff has not stated a 42 U.S.C.S. a 1983 claim involving supervisory liability against the warden.

Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights

[HN8] The standard set forth in precedent affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients.

Governments: State & Territorial Governments: Claims By & Against
Constitutional Law: Substantive Due Process: Scope of Protection

[HN9] The Due Process Clause is not implicated by a state official's
negligent conduct causing unintended loss of or injury to life, liberty or
property.

Constitutional Law: Substantive Due Process: Scope of Protection

[HN10] Pre-trial detainees must show that prison conditions are the
product of punitive intent on the part of state actors in order to state a due
process claim.

COUNSEL: TIMOTHY M. FILLEBROWN, PLAINTIFF, [PRO SE], BETHLEHEM, PA, USA.

For RICK ZETTLEMOYER, DEBBIE COMP, BRENDA PITRIZZO, HEATHER FLURER, IN THEIR
OFFICIAL/INDIVIDUAL CAPACITIES, DEFENDANTS: RALPH J. BELLAFATTO, TEEL, STETTZ,
SHIMER & DI GIACOMO, LTD., EASTON, PA, USA.

JUDGES: JAN E. DUBOIS, JUDGE

OPINIONBY: JAN E. DUBOIS

OPINION: MEMORANDUM

DUBOIS, J.

AUGUST 8, 1996

    Presently before the Court is defendant's Motion for Summary Judgment on
plaintiff's pro se civil rights suit brought under 42 U.S.C. a 1983. The
Motion will be granted for the reasons set forth below.

I. BACKGROUND

    Plaintiff, a pre-trial detainee at Northampton County Prison in Easton,
Pennsylvania, was injured when he fell from a standard model prison bunk bed on
October 29, 1994. He subsequently filed suit under 42 U.S.C. a 1983
against Rick Zettlemoyer, Warden of Northampton County Prison ["Warden
Zettlemoyer"], and members of the prison infirmary staff who treated him for his
injuries, Debbie Comp ("Nurse Comp"), Brenda Pitrizzo ("Pitrizzo") and Heather
Flurer ("Flurer"). n1

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

    n1 The defendants named in the caption and in the part of the Eastern
District of Pennsylvania's Complaint form for identification of defendants are

those listed above. These defendants were the only ones served with copies of the Summons and Complaint. Consequently, the two other persons identified as defendants in the part of the Complaint entitled "Statement of Legal Claim," a person named "Orlander" who is not otherwise identified, and the "Doctor of the Medical Department of the Northampton County Prison," are not considered by the Court to be defendants in this case.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*2]

In his pro se Complaint, plaintiff makes two claims under the Fourteenth Amendment to the United States Constitution alleging that: (1) the bunk bed from which he fell was defectively designed and maintained, and (2) his medical treatment for the head injury he sustained in his fall was inadequate. Plaintiff demands $ 100,000 in compensatory damages for pain and suffering, and for the emotional distress he allegedly experienced as a result of the defendant's conduct. He also demands punitive damages in the amount of $ 500,000.00.

The allegations as set forth in the Complaint and supplemented by plaintiff's deposition and medical records are as follows:

A few days before the accident occurred, plaintiff, who was assigned to sleep in the top bunk of a standard model metal bunk bed, requested re-assignment to a lower bunk, claiming that his pre-existing back injury was aggravated when he climbed into and out of the top bunk. Plaintiff also complained that his weight--approximately 250 pounds--presented additional difficulties in using the upper bunk. In his request, plaintiff did not mention the condition of the bed, nor did he state that it was defectively designed.

At approximately[*3] 10:00 in the morning of October 29, 1994, plaintiff fell from the top bunk and lacerated his scalp. Guards arrived at plaintiff's cell within five to ten minutes of the accident and escorted him to the prison infirmary. Nurse Comp, who was on duty at the time, cleaned plaintiff's laceration with sterile water and bandaged it. Plaintiff was immediately taken to Easton Hospital where he was admitted at 11:15 a.m., and examined by Dr. Kathleen Meehan who sutured the laceration.

When plaintiff returned to the prison, he was again seen by infirmary personnel who, in accordance with the hospital's outpatient discharge instructions, gave plaintiff Tylenol, an extra pillow, and special permission to use the bottom bunk. In the weeks following his injury, plaintiff experienced what he described as severe headaches, nausea and dizziness and was seen on several occasions in the prison infirmary. On those occasions he complained about his symptoms to Nurses Comp and Pitrizzo, who prescribed Tylenol for the pain. Nine months after the accident, plaintiff filed this suit.

Defendants filed the instant Motion for Summary Judgment on February 14, 1996. In its March 28, 1996 Order, the Court instructed[*4] plaintiff to respond to defendants' Motion, or to request additional time to respond by April 15, 1996. As plaintiff has neither responded nor sought additional time to do so, the Court will decide the Motion for Summary Judgment based on the submissions of the parties to date, that is, plaintiff's deposition and medical records, and the affidavit of Warden Zettlemoyer.

## II. DISCUSSION

[HN1] Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Carlson v. Arnot-Ogden Memorial Hospital, 918 F.2d 411, 413 (3d Cir. 1990). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). In order to defeat a motion for summary judgment, "the nonmoving party must adduce more[*5] than a mere scintilla of evidence in its favor," Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

Because plaintiff was        [HN2] a pre-trial detainee, not a convicted prisoner, during the period when the alleged unconstitutional conduct occurred, his claims must be evaluated under the Fourteenth Amendment rather than the Eighth Amendment to the United States Constitution. Bell v. Wolfish, 441 U.S. 520, 535, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979) (recognizing that "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions"). The inquiry under the Fourteenth Amendment is whether the conditions of confinement or the inadequacy of medical care received by plaintiff "amount to punishment of the detainee" or a mere incident of legitimate regulatory restraint. Id. at 535, 537. The Third Circuit has held that the standards for determining whether conditions of confinement, including medical care, can be considered impermissible "punishment" are essentially the same as those for determining whether prison conditions violate the Eighth Amendment under Estelle v. [*6] Gamble, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976), Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987), cert. denied 485 U.S. 991, 99 L. Ed. 2d 508, 108 S. Ct. 1298 (1988). See also Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326 (3d. Cir. 1987), cert. denied 486 U.S. 1006, 100 L. Ed. 2d 195, 108 S. Ct. 1731 (1988).

For plaintiff's claims to survive summary judgment, he must produce some evidence that defendants acted with the necessary culpable state of mind in allowing him to be subjected to unconstitutional conditions of confinement or in withholding adequate medical care. Estelle, 429 U.S. at 106. Specifically, plaintiff must show that defendants were deliberately indifferent to dangerous prison conditions or to his serious medical needs. Wilson v. Seiter, 501 U.S. 294, 305, 309, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991) (holding that

[HN3] "whether one characterizes the treatment received by [the inmate] as inhuman conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in Estelle").

A. Inadequate [*7] Medical Treatment Claim

In Estelle,     [HN4] the court held that, although an accidental or inadvertent failure to provide adequate medical care to a prisoner would not rise to the level of a constitutional violation, Estelle, 429 U.S. at 105-06, "deliberate indifference to serious medical needs of prisoners" would constitute an "unnecessary and wanton infliction of pain" and thus would violate the Eighth Amendment's prohibition against cruel and unusual punishment. Id. at 104 (holding that where inmate had been examined and treated by medical personnel on 17 occasions within a three-month period, he failed to state a cause of action against the treating physician under a 1983). n2 "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05. In order to establish that prison officials were deliberately indifferent to an inmate's serious medical needs, an inmate must provide evidence that the officials had actual knowledge of his objectively serious medical condition, [*8] and deliberately denied or delayed adequate treatment for that condition. See Farmer v. Brennan, 511 U.S. 825 (1994); Wilson, 501 U.S. 294, 115 L. Ed. 2d 271, 111 S. Ct. 2321.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2      [HN5] "In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Estelle, 429 U.S. 105-06, 50 L. Ed. 2d 251, 97 S. Ct. 285. "The law is clear that simple medical malpractice is insufficient to present a constitutional violation . . . a prisoner must show more than negligence; he must show 'deliberate indifference' to a serious medical need." Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993)

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

In the instant case, plaintiff does not allege that he was denied medical treatment; rather, he complains that the medical treatment he received was inadequate, and that this was the result of deliberate indifference on the part of Warden Zettlemoyer and the prison infirmary staff. Specifically, [*9] he argues that "it was very obvious that [his head] needed the stitches but it was also clear that [he] needed X-rays of [his] head to determine if [he] had a concussion or serious internal bleeding of the brain". Complaint P 7.

The decision not to X-ray plaintiff's head was not made by any of the named defendants. To the contrary, it was an independent decision made by the treating physician at Easton Hospital. Although private physicians who contract with state or local government to treat inmates are held to constitutional standards, West v. Atkins, 487 U.S. 42, 101 L. Ed. 2d 40, 108 S. Ct. 2250 (1988), it is clear from the record that the treating physician in this case, whether acting as an agent of the state or not, simply exercised professional judgment and was not indifferent to plaintiff's needs. Estelle, 429 U.S. at 107 (noting that "the question whether an X-ray--or additional diagnostic techniques or forms of treatment--is indicated is a classic example of a matter for medical judgment" and does not represent cruel and unusual punishment); Brown v. Borough of Chambersburg, 903 F.2d 274 (3d Cir. 1990) (holding that medical personnel are not indifferent[*10] if they exercise professional judgment in response to an inmate's serious needs). Regardless of whether the doctor's decision not to order an X-ray was based on reasonable professional judgment,

[HN6] prison administrators and the nursing staff of the prison infirmary cannot be found deliberately indifferent for failing to defer to an inmate's judgment about appropriate diagnostic care when it contradicts the recommendations of the treating physician. Durmer, 991 F.2d 64. Since defendants were entitled to rely upon the recommendations of the treating physician, their conduct did not amount to deliberate indifference. n3

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n3     [HN7] There is no evidence--nor does plaintiff even allege--that Warden Zettlemoyer participated in the alleged wrongdoing by having actual knowledge of plaintiff's situation and acquiescing in its occurrence or continuation. Accordingly, plaintiff has not stated a a 1983 claim involving supervisory liability against Warden Zettlemoyer. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*11]

Plaintiff also alleges that he did not receive adequate follow-up treatment,

and that the headaches and dizziness he continued to experience nine months after his fall resulted from his improperly treated head injury. Complaint P 15. However, it is clear that     [HN8] the standard set forth in Estelle "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). Given that the undisputed facts show that plaintiff was immediately treated by a physician following his injury, received follow-up care from prison infirmary staff, and to date has not suffered serious injuries as a result of the treatment, the Court concludes that defendants are entitled to summary judgment on plaintiff's medical treatment claim.

    A. Conditions of Confinement Claim

    Plaintiff contends that his due process rights were violated by dangerous conditions of confinement, namely a defectively designed standard prison bunk bed which tilted as he tossed and turned in it, causing him to fall and cut his head. Plaintiff attributes his fall to defendants' gross[*12] negligence and deliberate indifference in failing to have his bunk bed bolted to the floor.

    In Daniels v. Williams, the Supreme Court held that     [HN9] the Due Process Clause is not implicated by a state official's negligent conduct causing unintended loss of or injury to life, liberty or property. Daniels v. Williams, 474 U.S. 327, 328, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986) (holding that inmate who was injured when he tripped over a pillow negligently left on the jail's stairs by a deputy sheriff did not state a constitutional claim). Applying Daniels to the facts of this case, defendants are entitled to summary judgment on plaintiff's negligence claim.

    Moreover, plaintiff's claim involving the bed cannot survive on the theory that defendants were deliberately indifferent to his safety in failing to have it bolted to the floor. Plaintiff does not dispute that the bed from which he fell is a standard model prison bunk made in the prison welding shop of angle iron using measurements from other bunks bought from the Bureau of Corrections, Affidavit of Richard A. Zettlemoyer, Exhibit B to Def. Motion, nor does he claim that defendants had advance knowledge of any specific problems[*13] with his bunk bed. n4 He simply asserts that defendants should have known that it posed a danger. Where there is no evidence that prison officials--or even plaintiff himself--were aware of the risk which allegedly materialized, it certainly cannot be said that defendants were deliberately indifferent to plaintiff's safety.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

    n4 The Complaint states that plaintiff had requested assignment to a lower bunk before the accident because of a preexisting back injury, not because the

upper bunk was unsafe or otherwise Put him at risk of falling. Complaint P 2,
Fillebrown Deposition at 28-29.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

It follows that, plaintiff, as a pre-trial detainee, has not made out a claim
that the condition of the bunk bed constituted a punitive condition of
confinement as defined in Bell v. Wolfish, 441 U.S. at 537-38 (holding
that    [HN10] pre-trial detainees must show that prison conditions are
the product of punitive intent on the part of state actors in order to state a
due process claim).

III. CONCLUSION

In conclusion, the facts[*14] as set forth in the record before the Court do
not raise genuine issues of material fact as to whether plaintiff's due process
rights were violated when he allegedly received inadequate medical care or was
exposed to dangerous conditions of confinement. Consequently, defendants' Motion
for Summary Judgment under Fed. R. Civ. P. 56 will be granted.

ORDER

AND NOW, to wit, this 8th day of August, 1996, upon consideration of
Defendants' Motion for Summary Judgment (Document No. 16), plaintiff not having
responded to the Motion after having been given an extension of time in which to
do so, for the reasons set forth in the attached Memorandum, IT IS ORDERED that
Defendants' Motion for Summary Judgment is GRANTED and JUDGMENT IS ENTERED IN
FAVOR of defendants, Rick Zettlemoyer, Debbie Comp, Brenda Pitrizzo, and Heather
Flurer, and AGAINST the plaintiff, Timothy M. Fillebrown.

BY THE COURT:

JAN E. DUBOIS, J.