recreating in restraints is unconstitutional, the defendants respectfully submit that they are entitled to qualified immunity on this issue."

The defendants are incorrect because, as a matter of law, the facts show just the opposite.

It is of supreme importance in this opposition to carefully review the defendants' Memorandum, at 30., and to let the record reflect that the defendants' qualified immunity argument is directed <u>solely</u> at the: "policy of recreating in restraints", Defs' Mem. at 30. (thereby depriving plaintiff of out-of-cell exercise for 338 days as described). They raise no qualified immunity defense to the claims in the 3rd Amended Complaint concerning deliberate indifference -- failure to provide constitutionally adequate medical care, excessive force, and failure to protect. Accordingly, the court does not need to address any defense to those claims. <u>See</u>, e.g., <u>Keeney v. Estate of Nolan</u>, 196 F. Supp. 2d 190, 199 (D. Conn. 2002) (JCH) (The defendants "did not present an argument that they were entitled to qualified immunity for striking [plaintiff] in the head and face. Accordingly, the court does not address whether qualified immunity applies to that conduct.").

The qualified immunity analysis is well-

-21-

established : First, the Court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right; Second, if a violation can be made out, the Court must ask whether the right was clearly established. See Saucier V. Katz, 533 U.S. 194, 200-01 (2000); Ehrlich V. Town of Glastonbury, 348 F.3d 48, 54-55 (2d Cir. 2003).

First, the defendants' conduct did violate the plaintiff's constitutional rights. For 31 years, it has been the well-established law that the government must provide segregated prisoners the right to outdoor exercise for an hour, five days a week, and that it was "in a small, enclosed yard, open to the sky", was found to be consistent with Eighth Amendment requirements. See Sostre V. McGinnis, 442 F.2d 178, 186 (2d Cir. 1971) (in banc), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed. 2d 740 (1972).      See also Frazier V. Ward, 426 F. Supp. 1354, 1366 (N.D.N.Y. 1977) (One hour per day of outdoor exercise constitutionally sufficient).

In 1985, in Anderson V. Coughlin -- 17 years before the issues in this present case -- the Court described the right to exercise in

-22-

unequivocal terms, stating that : "Courts have
recognized that some opportunity for exercise
must be afforded to prisoners." 757 [**16] F. 2d
33, 35 (2d Cir. 1985) (emphasis added).
Id. See foregoing cited cases.

   Williams V. Goord, 142 F. Supp. 2d 416 ; 2001 U.S. Dist.
LEXIS 1338 (2d Cir. 2001). Twenty-eight days --
raised genuine issue of material fact, precluding
summary judgment.
      **In** this case the undisputed substantiated
      conduct is the defendants deprived the
      plaintiff Duane Ziemba, all out-of-cell exercise
      for 338 days.

   Housley V. Dodson, 41 F. 3d 597 (10th Cir. Nov. 29, 1994)
Only 30 minutes of out-of-cell exercise during
three month period was sufficient to state
civil rights claim against jail officials based
on violation of prohibition against cruel and
unusual punishment. U.S.C.A. Const. Amend 8 ; 42
U.S.C.A. § 1983.      Please also see Allen V.
Sakai, 48 F. 3d 1082, 1086-88 (9th Cir. 1995) (affirming
district courts denial of qualified immunity
where inmate allowed only forty-five minutes
of outdoor exercise per week for period of six
weeks) ;  Mitchell V. Rice, 954 F. 2d 187, 192

-23-

(4th Cir. 1992) (holding that qualified immunity is not appropriate because reasonable prison official should have known that depriving inmate of out-of-cell exercise for periods of seven months and eleven months would violate Eighth Amendment).

To briefly summarize, the case law in 2000 (the time of violation herein this case) firmly establised that prisoners had a constitutional right to exercise. Even by 1996, the Seventh Circuit had explicitly announced that "lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmates' health is threatened." Antonelli, 81 F.3d at 1432; Shelby County, 798 F.2d at 1089 (citing French, 777 F.2d at 1255), See also Greifinger, 97 F.3d at 704-06 (2d Cir. 1996) (concluding that the right to exercise clearly established by 1996 and discussing cases); Mitchell, 954 F.2d at 193 (stating that the law "clearly established that depriving inmates of all meaningful opportunities to exercise generally violates the Eighth Amendment prohibitions against cruel and unusual punishment."); Spain, 600 F.2d at 199 (observing that there is "substantial

agreement among cases in this area"
that regular exercise opportunities are
constitutionally [**28] required).
See Miller V. Carson, 563 F. 2d 741, 751, n.12
(5th Cir.1977) (deprivation of exercise may,
by itself, constitute an unconstitutional
impairment of health forbidden by
Estelle V. Gamble); Hardwick V. Ault, 447
F. Supp. 116, 125 (M.D. Ga. 1978) (limiting Segregated
prisoners to two hours exercise a week is
cruel and unusual punishment).
Exercise is one of the basic human needs
that prison officials must provide for under
the Eighth Amendment. Wilson V. Seiter,
501 U.S. 294, 304-305 (1991).
The United States District Court for the
Southern District of New York made a
specific ruling regarding the use of
the same mechanical restraints as in this
present case, during recreation in the
case Williams V. Goord, 111 F. Supp. 2d 280
(S.D.N.Y. 2000) -- in its decision, the Court
found the use of the mechanical
restraints could be found to violate a

prisoner's Eighth Amendment rights by jury. (emphasis added).   In its ruling, the Court in fact determined that prison's reasons for using the restraints, staff safety, was **NOT** sufficient penological justification for the use of the restraints... With respect to the restraints being unconstitutionally utilized during recreation and thereby clearly denying all right to exercise -- this case is exactly like this present action.

**H**ere, the evidence clearly shows, and indeed the facts are undisputed by the defendants, Id., that the defendants were personally involved and responsible for totally depriving the plaintiff of all out-of-cell exercise for a shockingly cruel 338 days. Furthermore, the undisputed material facts show that the plaintiff could not engage in any in cell meaningful exercise.   And that as a direct consequence the plaintiff suffered very serious, multiple physical and mental injuries. Id.

Second, the plaintiff's right to out-of-cell

exercise, and to be free from cruel and unusual punishment was clearly -- firmly established. Id. Please see cases cited.

C. Unconstitutional Deliberate Indifference

  1. Denied Constitutionally Adequate Medical Care

The defendants argue that there was "no denial of medical care." Defs' Mem. at 32. The facts and evidence herein this meritorious case show just the opposite.

The plaintiff from May 18, 2002 the date of his transfer to Northern, forward, verbally and through numerous requests, letters, grievances and appeals informed defendants Armstrong, Tokarz, Matos, Myers, Coates, Lajoie, Whidden, Oglesby, Blanchette, Dr. Wright and Wollenhaupt -- that his back/spinalcolumn is seriously and permanently injured, And each time that their staff members forcefully handcuff him behind his back it further seriously injures his back and causes serious pain. See Pl.'s Am. Compl. at 46.

This excessive and unnecessary use of force

Subjected plaintiff to serious injury, and pain and suffering continuously from May 18, 2002 until April 20, 2003 (338 Days). See Pl.'s Am. Compl. at 47.

Notwithstanding the profound injury, pain and suffering inflicted to plaintiff by the forceful handcuffing him behind the back [total 338 Days], the defendants with deliberate indifference failed to take action to have plaintiff handcuffed in front. See Pl.'s Am. Compl. at 48.

It was without penological justification for the defendants to have plaintiff forcefully handcuffed behind his back, continuously for 338 days, knowingly injuring him horribly, grotesquely and painfully. Because plaintiff is a non-violent offender. See Pl.'s Am. Compl. at 49.

The aforementioned defendants acted with deliberate indifference to the plaintiff's serious medical need. See Pl.'s Am. Compl. at 50.

Indeed a bottom bunk order, by other medical staff than defendants, was issued due to plaintiff's seriously injured back. Notwithstanding these facts, the defendants with deliberate indifference failed and refused to issue an order for plaintiff not to

-28-

be handcuffed behind his back. See Pl.'s Am. Compl. 51.

The defendants and each of them individually had the responsibility, authority and obligation to issue an order for the plaintiff not to be handcuffed behind his back and in front only, but they deliberately failed and refused to do so. See Pl.'s Am. Compl. 52.

The defendants have failed intentionally, utterly, uniformly and repeatedly to protect the plaintiff from their staff, agents and employees whom they are responsible for, from using the 338 days of excessive force on plaintiff by forcefully handcuffing him behind the back. See Pl.'s Am. Compl. 53.

The defendants each acted with reckless or callous indifference to the plaintiff's dignity as a human being and to his Constitutional rights. Pl.'s Am. Compl. 54.

By failing to provide the plaintiff with, and failing to ensure the provisions of, Constitutionally adequate medical care, the defendants knowingly disregarded an excessive risk to plaintiff's health and well being. And subjected him to pain, physical and mental injury, thereby violating plaintiff's rights under the Eighth and Fourteenth

Amendments. See Pl.'s Am. Compl. at 65.

These are the denial of adequate medical care claims. And respectfully the Plaintiff's Amended Complaint is a verified Complaint and is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determing whether material issues of fact exist under Rule 56 (e). King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (a verified pleading may serve as an affidavit for purposes of Rule 56 (e); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (same).

2. <u>Defendants Armstrong, Tokarz, Matos, Myers, Coates, Lajoie, Whidden, Oglesby</u>

Defendant Armstrong, he admits that he was: "responsible for administering and coordinating the operations of the Department and overall Supervision of all Correctional Institutions." He further "admits that he was responsible in a supervisory capacity for the supervision, training and discipline of persons working for the DOC." See Defs'. Answer at 5.

Defendants Tokarz and Matos, they both "admit that they had responsibilities related to

-30-

administering, coordinating and controlling the
operations of the Department and were responsible
for some supervision, training and/or discipline
of persons working for the Department and indirectly
for the establishment and enforcement of some
policies and practices and had duties related to
the custody of all inmates including plaintiff."
See Defs'. Answer at 6.

Defendant Myers, he "admits he had responsibilities
for administering and coordinating the operations of
Northern and for the care and custody of inmates
at Northern including the plaintiff." See Defs'.
Answer at 7.

Defendants Coates, Lajoie and Whidden each "admit
that they had responsibilities for administering and
coordinating the operations of Northern and for
the care and custody of inmates at Northern
including the plaintiff." See Defs'. Answer at 8.

Defendant Oglesby "admits that he was a
supervisory official with responsibilities related to
the care and custody of inmates including plaintiff."
See Defs'. Answer at 9.


These are genuine issues of material fact,
of the above named defendants each of
them were the responsible supervisory

-31-

Officials. And, as a matter of law, they are each properly named herein this meritorious action and face supervisory liability hereto.

A supervisory official defendant may be personally involved in a Section 1983 violation in the following ways : (1) the defendant participated directly in the alleged constitutional violation ; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong ; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom ; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts ; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Colon V. Coughlin, 58 F. 3d 865, 873 (2d Cir. 1995); Williams V. Smith, 781 F. 2d 319, 323–24 (2d Cir. 1986).

At Northern plaintiff filed a grievance dated June 5, 2002, and stated : "I have repeatedly

-32-

addressed matter to Warden Myers and Commissioner Armstrong and they refuse to respond or resolve and this is an emergency. Prison officials violently injured and damaged my back. Now Myers/Armstrong have their agents maliciously handcuffing me behind my back, which is seriously damaging my back and inflicting severe pain and unlawfully denying me out of cell time/recreation ..."

> Armstrong, Tokarz, Matos, Myers, Coates, Lajoie, Whidden and Oglesby had the responsibility, authority and obligation to act on this grievance and remedy the wrong, but they each failed and refused to do so. See Grievance Exhibit A, Armstrong's responses to Admissions at Attachment C.

Plaintiff filed a Request dated June 6, 2002 to Myers, Coates, Lajoie and Whidden stating: "I am again respectfully asking for you to immediately order your staff to stop handcuffing me behind my back ..., to stop re-injuring my back and causing severe pain." See Exhibit A, Armstrong's responses to Admissions Attachment D.

Plaintiff filed a Request dated June 7, 2002 to Myers, Coates, Lajoie and Whidden stating: "Re:

-33-

failure to remedy the wrong, again I am pleading with each one of you to order your staff to stop seriously injuring me by forcefully handcuffing me behind my back..." See Exhibit A, Armstrong's responses to Admissions Attachment E.

Plaintiff filed a Request dated June 9, 2002 to Myers, Coates, Lajoie and Whidden Stating: "Re: failure to remedy the wrong..." See Exhibit A, Armstrong's responses to Admissions Attachment F.

Plaintiff filed an emergency grievance dated June 11, 2002 and stated: "See attached five request forms which have not been acted on. Copy of this sent to Commissioner Armstrong, Warden Myers and Majors Coates, Lajoie and Whidden. Prison officials very seriously injured my back. Now each one of you: Armstrong, Myers, Coates, Lajoie and Whidden have your agents forcefully handcuffing me behind back which has/is re-injuring my back - damaging me. And intentionally you all refuse to act on all of my requests/grievances on matter..." See Exhibit A, Armstrong's responses to Admissions Attachment G.

Plaintiff filed a Request dated June 11, 2002 to Myers, Coates, Lajoie and Whidden regarding the

Same matter. See Exhibit A, Armstrong's responses to Admissions Attachment H.

Plaintiff filed yet another Request dated June 15, 2002 to Myers, Coates, Lajoie and Whidden regarding the same matter. See Exhibit A, Armstrong's responses to Admissions Attachment I.

Plaintiff filed yet another Request dated June 21, 2002 to Myers, Coates, Lajoie and Whidden regarding the same matter. See Exhibit A, Armstrong's responses to Admissions Attachment J.

Plaintiff filed a Request dated July 1, 2002 to Myers regarding the same matter. See Exhibit A, Armstrong's responses to Admissions Attachment K.

Plaintiff filed an emergency grievance dated July 2, 2002 stating: "I have submitted high volume of requests to Commissioner Armstrong, Warden Myers, Majors Coates, Lajoie and Whidden. They have refused to respond and this is emergency grievance. Challenging Department level policy of the above prison officials keep having their staff forcefully handcuff me behind my back. Which has/is inflicting severe pain and injury and is

denying me recreation and showers." See
Exhibit A, Armstrong's responses to Admissions
Attachment L.

Plaintiff filed a Request dated July 9, 2002 to
Myers, Coates, Lajoie and Whidden regarding the
same matter. See Exhibit A, Armstrong's
responses to Admissions Attachment M.

June 5, 2002 emergency grievance. Id.
June 6, 2002 Request. Id.
June 7, 2002 Request. Id.
June 9, 2002 Request. Id.
June 11, 2002 emergency grievance. Id.
June 11, 2002 Request. Id.
June 15, 2002 Request. Id.
June 21, 2002 Request. Id.
July 1, 2002 Request. Id.
July 2, 2002 emergency grievance. Id. and
July 9, 2002 Request.

The defendants with deliberate indifference
to the plaintiff's serious medical need,
failed utterly, uniformly and repeatedly
to act on or respond to these emergency
grievances and Requests. And they
each failed to do what they could

-36-

have done to avoid the injury, inflicted pain and suffering and risk to the plaintiff. See Rodriguez V. Walrath, 2004 U.S. App. LEXIS 7959 *3-4 (2d Cir. April 22, 2004) (Qualified immunity denied for non-medical personnel because "on some of the facts presented, a jury could find that these defendants failed to do what they could have done to avoid the risk to [the plaintiff's] health ....").

These genuine issues of material fact alone could give rise to a Rule 56 (g) order in the plaintiff's favor.

Additionally: the plaintiff filed a Request dated September 26, 2002. Defendant Coates responded; "Full restraints are required for A.S. Phase 1. If medical requests it consideration will be given." See Exhibit A, Armstrong's responses to Admissions Attachment N.     In addition See Attachment O, grievance filed by plaintiff dated October 22, 2002 - - "level 3 on 12/5/02 with copy to Commissioner Armstrong → for him to act on." It was never acted on. See Attachment P, Request dated 10/3/02 Defendant Myers responded and continued

-37-

to fail to remedy the wrong. Also at Attachment P, see the October 31, 2002 Grievance that was never acted on.

On December 17, 2002, plaintiff filed another grievance on this same matter. He carefully followed DOC 9.6 Directive Inmate Grievances, and after it was not responded to within mandated 30 days, he appealed it to level 2. Then when even the level 2 appeal was not responded to within 30 days, he appealed it to level 3. Incredibly, the defendants subordinate totally violated 9.6 Directive by refusing to process this Grievance. Defendant Matos in return condoned this unlawfulness. See Exhibit A, Armstrong's responses to Admissions Attachment Q.        Exhibit A, Armstrong's responses to Admissions Attachments R, S, T, U, V -- are further proof evincing, overwhelmingly, that these defendants were on actual and constructive notice.

Please know that the record reflects the plaintiff was so persistent, because the defendants have the custom and practice of alleging they never received the complaint, that they never knew of violation and allege therefore they cannot be held liable. Which does not apply hereto because the plaintiff was extremely persistent.

-38-

In addition to the aforementioned, to see even further genuine issues of material fact, the plaintiff sent defendant Armstrong 20 letters directly pertinent to these violations. See Exhibit B. And plaintiff sent defendants Tokarz and Matos 17 letters pertinent to these violations. See Exhibit D. And these defendants still failed to remedy the wrong and, inter alia, failed to act.

Supervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates "gross negligence" or "deliberate indifference" by failing to act. McCann v. Coughlin, 698 F.2d 112, 125 (2d Cir. 1983). See also Poe v. Leonard, "a supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts ...." 282 F.3d 123, 140 (2d Cir. 2002).

Meriweather v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989) ("[S]upervisory liability may

be imposed when an official has actual
or constructive notice of unconstitutional
practices and demonstrates 'gross
negligence' or 'deliberate indifference' by
failing to act.") ; <u>Provost v. City of
Newburgh</u>, 262 F.3d 146, 156 (2d Cir. 2001)
(supervisor may be found "grossly negligent"
or "deliberately indifferent" if he "knew
or should have known" of the underlying
facts.) ; <u>Rodriguez v. State of Connecticut</u>,
169 F. Supp. 2d 39, 44-45 (D. Conn. 2001) (JCH) :
Ruling on Defendants' motion for
judgment on the Pleadings [DKT. No. 193]
(May 8, 2003, Judge Hall) at 14-18.

3. <u>Conspiracy To Deprive Plaintiff Of Medical Care</u>

  **The** defendants argue that there was "no conspiracy
to deprive plaintiff of medical care." See Defs.
Mem. at 35.      The defendants either
misunderstand or intentionally mischaracterize
Plaintiff's 3rd Amended Complaint. In fact,
the Amended Complaint sets forth five (5)
claims for relief -- however, there is not a
claim of "conspiracy" to deprive plaintiff of
medical care (as the defendants argue there is).
See Complaint.   Therefore the plaintiff does

-40-

not address this defense by the defendants.

4. <u>In The Unique Circumstances Of This</u>
<u>Case -- The Custodial Defendants Are Not</u>
<u>Entitled To Rely On Medical Staff</u>

The defendants argue that "custodial defendants
entitled to rely on medical staff." See Defs'.
Mem. at 36. In the unique circumstances of
this case the record shows just the opposite.

First, the custodial defendants in this case
are not just custodial staff, but are each
custodial <u>supervisory official</u> defendants. Id.

Second, for all the reasons advanced herein,
the custodial defendants' personal involvement
in the constitutional violations, is already
sufficiently and in abundance substantiated.

5. <u>Defendants Personal Involvement IS Shown</u>

The defendants argue that there is "insufficient
personal involvement in claimed lack of medical
care." Defendants' Mem. at 37. The defendants
are mistaken. As advanced herein, the
custodial defendants' personal involvement has

-41-

already been abundantly substantiated. Id.
The remaining defendants are Blanchette,
Dr. Wright and Wollenhaupt. The truth about
defendants Blanchette, Dr. Wright and
Wollenhaupt's personal involvement in,
and responsibility for, plaintiff's
Unconstitutional treatment and injuries is
equally subject to genuine dispute.

> To obtain Summary judgment in this
> case, it is not enough for the
> defendants to simply assert that
> they provided the plaintiff appropriate
> medical care. If this kind of
> self-serving allegation were enough to
> win a party summary judgment, no
> case would ever go to trial.

See Estelle v. Gamble, 429 U.S. 97 (1976):
[D]eliberate indifference to serious medical needs
of prisoners constitutes the "unnecessary and
wanton infliction of pain" proscribed by the
Eighth Amendment. This is true whether the
indifference is manifested by prison doctors in
their response to the prisoner's needs or by
prison guards in intentionally denying or delaying

access to medical care or intentionally interfering with the treatment once prescribed". Id. at 104 (citation and footnotes omitted, emphasis added).

Deliberate indifference will be found where "the medical attention rendered [was] so woefully inadequate as to amount to no treatment at all." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) [**15] (citation omitted).

In this case the medical attention rendered for the plaintiff's back injury was so woefully inadequate as to constitue no treatment at all. The proper treatment would have been to render humane care by ordering plaintiff to be handcuffed in the front, in order for his seriously injured back to heal. Instead the defendants condoned the policy and custom of forcefully handcuffing the plaintiff behind the back, which exacerbated the condition and for 338 days re-injured the plaintiff's back and inflicted nothing less than

torture. The record makes clear, as
the defendants point out, that
medical staff did repeatedly See the
plaintiff -- directly because the
course of treatment amounted to no
treatment at all.
Emphasis: to obtain summary judgment
in this case, it is not enough for
the medical staff defendants to
attempt to shift the blame and
responsibility to the custody staff
defendants (as indeed is the case).
Vice-versa, the custody defendants
have attempted to shift the blame
to medical-defendants. However, it is
abundantly clear that each defendant
named in this lawsuit with deliberate
indifference declined to do anything
whatsoever to improve [the plaintiffs]
horrific situation. They each had the
opportunity and obligation to provide, or
to ensure the provisions of
Constitutionally adequate medical care,
but they failed and refused to do so.


The fact that the plaintiff received some medical
care does not preclude a finding or deliberate

-44-

indifference where the "course of treatment was largely ineffective and [the defendants] declined to do anything more to attempt to improve [the plaintiffs] situation." Hathaway I, 37 F.3d at 68; See also Tolbert V. Eyman, 434 F.2d 625, 626 (9th Cir. 1970).

7. <u>Defendants Blanchette, Dr. Wright And Wollenhaupt -- And Custodial Defendants Further Liability</u>

Defendant Blanchette was a Doctor employeed by the DOC, responsible for providing Constitutionally adequate medical care to the plaintiff. See Pl.'s 3rd Am. Compl. at 10. Defendant Blanchette was, also the supervisory official -- Director of Clinical Services for the DOC. See Defs'. Exhibit N, Affidavit of Blanchette.

Defendant Dr. Wright was a Doctor employeed by the DOC, responsible for providing Constitutionally adequate medical care to the plaintiff. Pl.'s. Compl. 10.

Defendant Wollenhaupt, she was a registered nurse and the medical supervisor of Northern C.I. she was specifically responsible for the supervision of Northern medical staff, and the control and operation of the Northern medical unit, and responsible for providing Constitutionally adequate medical care to the plaintiff. See Pl.'s Compl. 11.